BEST & CO., INC., APPELLANT, V. CITY OF OMAHA, A MUNICIPAL CORPORATION, ET AL., APPELLEES, ASSOCIATED RETAILERS OF OMAHA, A CORPORATION, ET AL., INTERVENERS, APPELLEES.

33 N. W. 2d 150

Filed June 29, 1948. No. 32369.

*Fraser, Connolly, Crofoot & Wenstrand, Strauss, Reich & Boyer, W. H. Wright,* and *M. James Spitzer,* for appellant.

*Edward F. Fogarty, Edward Sklenicka, Einar Viren, Ralph E. Svoboda,* and *J. A. C. Kennedy, Jr.,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

MESSMORE, J.

The two cases docketed in this court as General Numbers 32369 and 32370, by stipulation of the parties, were consolidated for trial in the court below on an agreed statement of facts.

The appellants are New York corporations. Best & Co., Inc., the appellant in No. 32369, is engaged in the retail sale of wearing apparel in New York City, and Frank Brothers Footwear, Inc., the appellant in No. 32370, is engaged in the retail sale of footwear and kindred products in New York City. In December 1946, both corporations filed petitions in the district court for Douglas County against the proper officers of the city of Omaha to procure an injunction to restrain the enforcement of article 1, chapter 22, of Ordinance No. 14924, and Ordinance No. 15524, as the same applied to each of the said corporations, on the ground that the ordinances were repugnant to the commerce clause, article 1, section 8, of the Constitution of the United States. The Associated Retailers of Omaha, a corporation, and the Omaha Master Furriers Guild, a non-profit association of furriers, unincorporated, were permitted to intervene.

The answers in intervention alleged in part and substance that the occupation tax and requirements under the ordinances assailed erect no barriers against interstate commerce, and freedom of competition as between the plaintiffs and the interveners was acknowledged, upon the payment by the plaintiffs of a fair share of the local cost of government and compliance with the reasonable requirements of the ordinances for the conduct of the local aspects of their business imposed for the

protection of the health and welfare of the local citizens. It was further alleged that the interveners had a direct interest in the outcome of the action for the reason that interveners were competitors with the plaintiffs; that interveners pay taxes not imposed on the plaintiffs; and should plaintiffs prevail in these actions, interveners would be placed in an unfair competitive position to their injury, and dislocation of tax outlay would result, casting an unfair burden of taxes upon the interveners. Prayer was for dismissal of the plaintiffs' petitions.

The answer of defendants, for the purpose of these appeals, denied that the ordinances in question violated the commerce clause of the Constitution of the United States or any other provisions of the Constitution of the United States; alleged that the proper authorities of the defendants charged with enforcing the ordinances intended to enforce the same with reference to the plaintiffs; and prayed dismissal of the plaintiffs' petitions.

Reply of the plaintiffs to the answer of interveners was a general denial.

The portions of chapter 22, article 1 of Ordinance No. 14924, pertinent to this case, in substance, follow: 22-1.1. The term "person", as used includes corporations. The term "itinerant vendor" is defined to be any person, either as principal, agent or employee, who does not intend to conduct his business in the city of Omaha for a period of longer than 120 days, or who does not maintain a regular place of business in Omaha for the conduct of retail trade; and who locates in a store, building, or place of business, or hotel room, or solicits by mail, and who offers for sale, or sells or takes orders for goods, wares, or merchandise. It is declared unlawful for an itinerant vendor as above defined to carry on or offer to carry on the character of business above defined, and to sell or offer to sell by any of the means above set out, any goods, wares, or merchandise. Any person desiring a permit to carry on a character of business as before set out shall make an application therefor in

writing to the city council of the city of Omaha. The application provides for inquiry into the character of the applicant and of the solicitors or agents named by him, and into the character of the merchandise to be handled; and if the council should find that the applicant or his agents, etc., are not persons of good character, or that the merchandise to be handled or the method of handling same are involved in misrepresentation or dishonesty, the application should be denied. If the application is approved, each solicitor shall personally appear before the city clerk and pay the sum of one dollar to secure a permit. The ordinance levies and imposes an occupation tax of $15 per day upon the business of the itinerant vendor, payable in advance, and provides for the collection of the tax and a penalty for violation of the ordinance.

Ordinance No. 15524, to amend chapter 22, article 1 of Ordinance No. 14924, by adding thereto two sections designated 22-1.6 and 22-1.7, provides that prior to the issuance of the license a $5,000 surety bond must be furnished to the city clerk, executed by a surety company authorized to do business in the state, conditioned upon the faithful compliance by the licensee with the terms and requirements of the ordinance, and conditioned to indemnify any purchaser of merchandise from the licensee, etc., against loss or damage by reason of misrepresentation as to the kind, quality or value of the merchandise. Before any license shall be issued, the itinerant vendor shall furnish, as part of his application, a health certificate by a duly licensed physician licensed to practice as such physician within the state of Nebraska, certifying that the licensee and all employees connected with such business are free from any contagious or infectious disease.

Other provisions of the ordinances need not be summarized.

The stipulated facts, abridged, show the adoption of Ordinance No. 14924 on May 13, 1941, which established

a municipal code, and on September 3, 1946, the adoption of Ordinance No. 15524, amending chapter, 22, article 1 of Ordinance No. 14924; the nature of the business engaged in by plaintiff corporations and the continual existence thereof for a long period of time; and that neither corporation maintained branch stores in the city, or state, nor regular places of business therein. Prior to December 6, 1946, Best & Co., Inc., rented a display room at a local hotel for the purpose of displaying samples of its merchandise on December 6th and 7th, 1946. From its New York office this plaintiff mailed to its customers in and near the city notice in advance of such displays. On the dates mentioned a representative of this plaintiff, a nonresident of the state, displayed samples of merchandise to customers and obtained orders from same for the sale of merchandise for future shipment in interstate commerce. No merchandise was offered for sale at the display and none was available for that purpose. All orders taken were subject to acceptance or rejection at plaintiff's New York office. Orders accepted were filled by shipment direct from plaintiff's New York store to the purchasers by mail or through other regular channels of interstate commerce. No merchandise was sent by plaintiff to its representative for delivery to the purchasers. No payment or deposit on account of the purchase price of the merchandise so ordered was received or accepted by the plaintiff's representative. On all orders accepted by the plaintiff, invoices for the purchase price of the merchandise purchased were sent by mail from plaintiff's New York office to the purchasers who remitted payment direct to plaintiff's New York office. Displays of samples of its merchandise and the solicitation of orders for later out-of-state fulfillment, in the same manner as hereinbefore set out, have been conducted in Omaha by the plaintiffs for several years prior to 1946. Such displays have occurred only infrequently, never more than two in any one year, and never for a longer period of time than two days on

any one occasion. The plaintiffs intend to make similar displays at intervals in the future, unless prevented from doing so legally. Defendants are charged with the enforcement of the ordinances, and unless plaintiffs comply fully with the terms and provisions thereof, defendants will endeavor to enforce the ordinances against them. Local retail merchants who maintain a regular place of business in the city of Omaha and who sell merchandise of a similar class and type as that sold by the plaintiffs, and who are in competition with the plaintiffs, do not come under the provisions of the ordinances. Plaintiffs and other merchandising firms of like character, during their two or three day stands in hotel rooms without paying any tax therefor, receive as part of the public services of local government the police and fire protection and other services furnished by the local government and paid for by the taxpayers of the city and state, including, in part, the interveners. Interveners pay real estate taxes and various other taxes not paid in the city and state by the plaintiffs. The State of Nebraska or its municipal subdivisions have never embraced the sales tax or its concomitant use tax as a device for raising revenue for state and local government, but have instead relied on property taxes, occupation taxes, and license fees for such revenue.

The stipulated statement of facts with reference to Frank Brothers Footwear, Inc., is to the same effect and involves display and sale of its merchandise in the same manner. We deem it unnecessary to set forth such facts relative to this plaintiff, as the issues are the same in both cases.

The trial court found that the tax imposed, of $15 for each day of plaintiffs' local activities, was not unreasonable, excessive or prohibitive in amount; was not discriminatory with respect to the class of persons or occupations to which it was applied; and fairly apportioned the cost of local government among the plaintiffs and others of its class and local merchants with whom

it and they are in competition. The court further found that no irreparable injury to the plaintiffs warranting the intervention of the court had been demonstrated, and that no injunction should accordingly issue to restrain a criminal prosecution under or enforcement of the ordinance and its amendments; that the interveners represent, as a class, local merchants with whom the plaintiffs were in competition, and possess a special interest entitling them to intervene to oppose the attack of the plaintiffs upon the ordinance and its amendments whereby the interveners might be burdened with more than a fair share of the cost of local government, as against the plaintiffs.

The court overruled the motion of the plaintiffs to dismiss the petitions in intervention and decreed that the ordinance and amendments, as heretofore set out in substance, are valid and subsisting ordinances of the city in their application to the plaintiffs; that the activities of the plaintiffs constitute an identifiable occupation of a local character and a doing of business within the city of Omaha, which is segregable and separable and as to which a not unreasonable occupation tax may be levied; and dismissed plaintiffs' petitions.

Upon the overruling of motion for new trial, plaintiffs appealed.

The appellees moved to dismiss the appeals in this court, and by way of plea in abatement of such appeals, alleged that the appellants had separately paid the occupation taxes levied under, and had otherwise complied with, the ordinances against which injunctions are sought, thereby rendering the appeals moot. Since the entry of the decrees appealed from, the appellants have complied with the ordinances in all respects, under protest, reserving their contentions that the ordinances were unconstitutional and invalid as applied to appellants; further, the purpose of complying with the ordinance and its amendment was to enable the appellants to continue exhibits in the city and to avoid interruption of

business and criminal prosecution of employees. The appellants were not permitted to file a supersedeas bond, nor would the city authorities stipulate to not enforce the ordinances pending appeal.

In furtherance of the motion to dismiss the appeals and the plea in abatement, the appellees cite cases to the effect that: "An appeal presenting nothing but moot questions may be dismissed upon the appellate court's own motion." State ex rel. Spillman v. Dunbar State Bank, 119 Neb. 571, 230 N. W. 452. See, also, Dodge Agricultural Credit Ass'n v. Tighe, 121 Neb. 458, 237 N. W. 404, and several cases from the United States Supreme Court to the effect that to adjudicate a cause which no longer exists is a proceeding which that court uniformly has declined to entertain. The appellees especially rely on Singer Mfg. Co. v. Wright, 141 U. S. 696, 12 S. Ct. 103, 35 L. Ed. 906; Little v. Bowers, 134 U. S. 547, 10 S. Ct. 620, 33 L. Ed. 1016; Harvey v. Early, 160 F. 2d 836, and other cases to the same effect which need not be cited.

In Singer Mfg. Co. v. Wright, *supra,* the only relief sought was to restrain a collection of the particular taxes for which executions were in the hands of the sheriff. When those taxes were paid, the reason and basis for granting injunctive relief terminated. In the instant case the appellants do not seek to restrain defendants from collecting the occupation taxes for the few exhibits that have been held and for which the appellants paid the taxes. The appellants seek an adjudication that the ordinance and its amendment are unconstitutional and plead for a permanent injunction to restrain the appellees and their successors in office from enforcing the ordinances against the appellants, and from interfering with the solicitation in the city, by appellants, of orders for the sale of merchandise in interstate commerce.

The applicable principle of law is expressed in First Trust Co. v. Airedale Ranch & Cattle Co., 136 Neb.

521, 542, 286 N. W. 766, quoting from Madison Avenue Baptist Church v. Baptist Church in Oliver Street, 73 N. Y. 82, 95: "It is the practice of courts of equity, when they have once obtained jurisdiction of a case, to administer all the relief which the nature of the case and the facts demand, and to bring such relief down to the close of the litigation between the parties." Cases to this effect are too numerous to cite.

We conclude that the appellees' motion to dismiss the appeals must be overruled.

The appellants moved to dismiss the petitions in intervention for the reason that (1) there is no showing that the city of Omaha and its officials are not defending the actions in good faith, and (2) the interveners do not have any direct, substantial, or immediate interest in the subject matter of the action. The decree appealed from held that the interveners represented a class of local merchants with whom the appellants were in competition and thereby possessed an adequate interest entitling them to intervene. The motions to dismiss were overruled.

"The rule to which this jurisdiction is committed is: 'When public officers are engaged in litigation to protect public rights, and their pleadings and procedure maintain the public interest, no private person is entitled to intervene.'" Smithberger v. Banning, 130 Neb. 354, 265 N. W. 10.

The City of Omaha, through its legally constituted authorities, was vigorously and ably doing everything that could be done to protect any rights which the defendant city might have, and we see no reason why these taxpayers should have encumbered the record by intervention.

The interest in a matter in litigation which will authorize a person to intervene in an action under section 25-328, R. S. 1943, must be such a direct and immediate interest that the person or persons seeking to intervene will either lose or gain by the direct operation and legal

effect of the judgment which may be rendered in the action. This interest must be one arising from a claim to the subject matter of the action or some part thereof, or a lien upon the property or some part thereof. An indirect, remote or conjectural interest in the result of the suit is not enough to permit intervention. See, Cornhusker Electric Co. v. City of Fairbury, 131 Neb. 888, 270 N. W. 482; Drainage District v. Kirkpatrick-Pettis Co., 140 Neb. 530, 300 N. W. 582.

We conclude that the appellants' motion to dismiss the petitions in intervention should have been sustained.

The appellees contend that no injunction should have been granted in any event for the reason that no basis is shown under Nebraska statutes for the granting of injunctions, citing sections 25-1063, 77-1727, and 77-1728, R. S. 1943, because the application of an otherwise valid ordinance to an interstate commerce operation can be tested by an action to recover the tax after payment, and the raising of all defenses in the ordinary criminal proceeding, citing Beal v. Missouri Pacific R. R. Corporation, 312 U. S. 45, 61 S. Ct. 418, 85 L. Ed. 577, to the effect that courts of equity do not ordinarily restrain criminal prosecutions, even though unauthorized and hence unlawful; and will do so only to prevent irreparable injury. Other federal cases are cited to the effect that it is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions.

In the instant case the trial court denied an injunction on the grounds first, that the ordinances are constitutional, and second, that the appellants did not show that they would otherwise be irreparably injured, and consequently were not entitled to such redress.

In Hoyt Bros. v. City of Lincoln, 130 Neb. 79, 263 N. W. 898, an injunction was granted to prevent the city attorney and chief of police from interfering with the plaintiff's agents in soliciting orders for merchandise for future delivery from outside the state in violation of an ordinance forbidding peddling without a license

and without the payment of an occupation tax. The court pointed out·that the plaintiff would be subject to a multiplicity of prosecutions and that the continued enforcement of the ordinance would interfere with the conduct of his business. This court held: "In a proper case, a court of equity may exercise jurisdiction to prevent a multiplicity of prosecutions to collect confiscatory fines for violations of city ordinances where their continued enforcement to recover penalties will interfere with the transaction of commercial business lawful in itself and result in irreparable injury."

The petitions alleged the ordinances were 'void on the ground, among others, that they were unreasonable, confiscatory, and amounting to the prohibition of the lawful business in which the plaintiff was engaged.

In Golden v. Bartholomew, 140 Neb. 65, 299 N. W. 356, this court said: " 'An adequate remedy at law means a remedy which is plain and complete and as practical and efficient to the ends of justice and its prompt administration as the remedy in equity.' Standard Oil Co. v. O'Hare, 122 Neb. 89, 239 N. W. 467. 'A legal remedy which will oust the equity court of jurisdiction must * * * be capable of being asserted without rendering the litigant liable to the imposition of a penalty or forfeiture. A litigant, instead of resorting to an equitable remedy, is not obliged to take the risk of prosecution, fine, imprisonment, and loss of property in order to test the constitutionality of a statute.' 19 Am. Jur. 119, sec. 115."

In Terrace v. Thompson, 263 U. S. 197, 44 S. Ct. 15, 68 L. Ed. 255, the court held: "Equity jurisdiction will be exercised to enjoin the threatened enforcement of a state law which contravenes the Federal Constitution wherever it is essential in order effectually to protect property rights and the rights of persons against injuries otherwise irremediable; and in such a case a person, who as an officer of the State is clothed with the duty of enforcing its laws and who threatens and is about to commence proceedings, either civil or criminal, to enforce

such a law against parties affected, may be enjoined from such action by a federal court of equity. * * *. They (plaintiffs) are not obliged to take the risk of prosecution, fines and imprisonment and loss of property in order to secure an adjudication of their rights. The complaint presents a case in which equitable relief may be had, if the law complained of is shown to be in contravention of the Federal Constitution." See, also, Real Silk Hosiery Mills v. City of Portland, 268 U. S. 325, 45 S. Ct. 525, 69 L. Ed. 982; Speier's Laundry Co. v. City of Wilber, 131 Neb. 606, 269 N. W. 119; Webber v. City of Scottsbluff, 141 Neb. 363, 3 N. W. 2d 635.

That appellants could test the legality of the ordinance and its amendment by subjecting their representative to criminal prosecution and by having their business and property rights interfered with is not a sufficiently adequate remedy to preclude appellants from proceeding to secure injunctive relief.

The appellants predicate error on the trial court's holding that the ordinances in question would not contravene article 1, section 8, of the Constitution of the United States. Appellants contend that the ordinances place a burden on interstate commerce which amounts to an unlawful regulation thereof, interference therewith, and an impediment thereto, and discriminates against such commerce in favor of intrastate commerce.

The general rule in cases involving an analogous factual situation as in the instant case appears in the annotation at 162 A. L. R., p. 859, as follows: "* * * that a state statute or municipal ordinance imposing a tax or requiring a license for sale of, or solicitation of orders for, goods, constitutes an unlawful interference with interstate commerce as applied to solicitation of orders for goods not within the state at the time, but to be shipped, if and when the orders are accepted, from another state in fulfilment of the orders previously taken."

The leading case on the subject is Robbins v. Shelby

County Taxing District, 120 U. S. 489, 7 S. Ct. 592, 30 L. Ed. 694, which involved a factual situation very similar to the cases at bar, and from which the general rule as stated above came into being. The court held that the power granted to Congress to regulate commerce among the states, being exclusive when the subjects are national in their character, and admitting only of one uniform system of regulation, the failure of Congress to exercise that power in any case is an expression of its will that the subject shall be free from restrictions or impositions upon it by the several states. In the opinion the court said: "In a word, it may be said, that in the matter of interstate commerce the United States are but one country, and are and must be subject to one system of regulations, and not to a multitude of systems. The doctrine of the freedom of that commerce, except as regulated by Congress, is so firmly established that it is unnecessary to enlarge further upon the subject."

The court further held that interstate commerce cannot be taxed at all by a state, even though the same amount of tax should be laid on domestic commerce, or that which is carried on solely within the state.

The afore-cited case has been followed in a large number of cases, too numerous to cite. See note No. 3, and cases cited thereunder, on pages 859, 860, and 861 of the annotation above cited. This class of cases is commonly referred to as "drummer cases."

The rule as announced in Robbins v. Shelby County Taxing District, supra, was followed in Menke v. State, 70 Neb. 669, 97 N. W. 1020, and Purchase v. State, 109 Neb. 457, 191 N. W. 677. See, also, State v. Smith, 135 Neb. 423, 281 N. W. 851.

In addition to the cases cited, the appellants rely on Best & Co. v. Maxwell, 311 U. S. 454, 61 S. Ct. 334, 85 L. Ed. 275, decided December 23, 1940, involving one of the same appellants as in the instant case. The factual situation was the same as in the instant case. Before using the room to display merchandise, the appellant

paid under protest the tax required by the law of North Carolina which levies an annual privilege tax of $250 on every person or corporation, not a regular retail merchant in the state, who displays samples in any hotel room rented or occupied temporarily for the purpose of obtaining retail orders. The appellant was not a regular retail merchant of the state and admittedly was within the statute. The contention was that the tax was unconstitutional, especially in view of the commerce clause. The statute was held invalid under the federal Constitution as a discrimination against interstate commerce. The court said: "The freedom of commerce which allows the merchants of each state a regional or national market for their goods is not to be fettered by legislation, the actual effect of which is to discriminate in favor of intrastate businesses, * * *." The court further said: "The commerce clause forbids discrimination, whether forthright or ingenious. In each case it is our duty to determine whether the statute under attack, whatever its name may be, will in its practical operation work discrimination against interstate commerce."

In McGoldrick v. Berwind-White Coal Mining Co., 309 U. S. 33, 60 S. Ct. 388, 84 L. Ed. 565, the court pointed out that the line of decisions following Robbins v. Shelby County Taxing District, *supra*, read in their proper historical setting rested on the actual and potential discrimination inherent in certain fixed-sum taxes.

The appellees contend that Best & Co. v. Maxwell, *supra*, may be distinguished from the instant case. Later in the opinion we will briefly review the appellees' contention in such respect.

The appellants also rely on Nippert v. City of Richmond, 327 U. S. 416, 66 S. Ct. 586, 90 L. Ed. 760, the most recent decision of the Supreme Court of the United States involving a fixed-sum tax on solicitation of orders for the sale of goods to be shipped interstate into the taxing state. An ordinance of Richmond, Virginia, levied a license tax upon engaging in business as solicitor, and

required a license to be obtained from the director of public safety. The defendant went from place to place in the city of Richmond soliciting orders on behalf of a garment company of Washington, D. C., for the sale thereof. She received a down payment sufficient to pay her commission from the purchaser, and the orders were sent to the home office in Washington and the garments sent through the mail c. o. d. for the balance, to the purchaser. Defendant was convicted and fined. The Supreme Court of Appeals of Virginia affirmed the conviction and fine. The Supreme Court of the United States reversed such holding and held that the ordinance so applied violated the commerce clause of the federal Constitution, following Robbins v. Shelby County Taxing District, *supra*. The effects of the tax were not only prohibitive in an absolute sense, in many applications, but discriminatory in favor of the local merchant as against the out-of-state merchant. The court further said: "If the matter is to be settled solely on the basis of authority, nothing more is required than bare reference to the long list of drummer decisions, which have held unvaryingly that such a tax as Richmond has exacted cannot be applied constitutionally to situations identical with or substantially similar to the facts of this case."

The court cited Real Silk Hosiery Mills v. City of Portland, *supra,* in which a municipal ordinance requiring solicitors to pay a license fee was held unconstitutional as a forbidden burden upon interstate commerce when applied to an out-of-state corporation whose representatives solicited orders for subsequent interstate shipment. Cf. Best & Co. v. Maxwell, *supra.*

The appellees contend: That the foregoing cited cases, the so-called "drummer cases", afford no immunity to the appellants in the instant case. Since 1938 new concepts of permissible taxation embraced by the United States Supreme Court appear in the more recent, modern decisions, citing Western Live Stock v. Bureau of Revenue, 303 U. S. 250, 58 S. Ct. 546, 82 L. Ed. 823, decided in

1938, the contention being that in the cited case the Supreme Court of the United States departed from the prior formalistic approach to the taxing phase of the commerce question and conceded the compelling economic needs of the state and expressed the realization that the commerce clause does not compel complete immunization of interstate commerce to state taxation. The rationale of this new approach was the logical result of prior decisions, which condemned only undue or unreasonable burdens by the states upon the national commerce. Therefore the "drummer cases," including Menke v. State, *supra,* and Purchase v. State, *supra,* are outmoded.

It is further contended that the new trend appears in Adams Mfg. Co. v. Storen, 304 U. S. 307, 58 S. Ct. 913, 82 L. Ed. 1365, 117 A. L. R. 429; Gwin, White & Prince, Inc. v. Henneford, 305 U. S. 434, 59 S. Ct. 325, 83 L. Ed. 272; McGoldrick v. Berwind-White Coal Mining Co., *supra,* and other cases cited. There appears certain language in some of the cited cases to the effect that there is no lack of power in the state or municipalities to see that interstate commerce bears with local trade its fair share of the cost of local government, more especially in view of recent trends in this field.

The appellees contend that an occupation tax of $15 a day in the instant case constitutes a modest and reasonable fee, and requires merely the appellants to bear their fair share of the cost of local government.

Other language appearing in decisions cited by the appellees is as follows: "The commerce clause was not designed or intended to outlaw all state taxes bearing 'directly' on interstate commerce. Its design was only to exclude those having the effects to block or impede it which called it and the Constitution itself into being. Not all state taxes, nor indeed all *direct* state taxes, can be said to produce those effects." Concurring opinion by Rutledge, J., in Freeman v. Hewit, 329 U. S. 249, 67 S. Ct. 274, 91 L. Ed. 205.

Consequently the trend of recent decisions has been towards sustaining state taxes formerly regarded as outlawed by the commerce clause.

The trend, as pointed out in Vol. I, Prentice-Hall Corporation Service, paragraph 7062, is: "In the field of taxation, the modern trend is to allow the states to assess certain types of taxes on corporations doing interstate business, provided the tax or taxes are not discriminatorily burdensome on interstate commerce." And in paragraph 7064: "Even exclusive interstate commerce must apparently now pay its way, the modern trend seeming to regard all business as being subject to non-discriminatory state taxes. No improper burden will ordinarily be found to exist unless interstate commerce is subjected to greater tax burden than local commerce, or unless it is taxed purely by reason of its interstate character."

An analysis of the principal cases cited by the appellees to show the new trend or approach discloses the following: In Western Live Stock v. Bureau of Revenue, *supra,* the state of New Mexico levied an occupation tax on the business of publishing newspapers and magazines of two percent on the gross receipts on the sale of advertising. The tax was upheld as applied to a magazine with an interstate circulation. The office and place of business of the publishers were in the state of New Mexico. The court neither directly nor by implication overruled the "drummer cases."

The case of Adams Mfg. Co. v. Storen, *supra,* involved the general gross income tax which of recent years has been adopted by some of the states, in this instance Indiana. The case in no manner overrules the "drummer cases."

In the case of Gwin, White & Prince, Inc. v. Henneford, *supra,* the state of Washington imposed an occupation tax for the act or privilege of engaging in business activities within the state of Washington at the rate of one-half of one percent of the gross income of the busi-

ness. The statute was held unconstitutional as applied to the receipts of a Washington corporation from its operations in marketing in other states fruit grown in Washington and Oregon.

The cases cited by the appellees with reference to the development of the new approach or trend have not overruled Robbins v. Shelby County Taxing District, *supra,* which has met the test and has been reaffirmed in Best & Co. v. Maxwell, *supra,* where the facts were substantially the same.

As previously stated, the appellees contend there is a distinction between the instant cases and the case relied upon by the appellants, Best & Co. v. Maxwell, *supra.* The basis of this contention is that the $250 annual occupation tax required of a nonresident merchant as against a $1 occupation tax required of a local merchant, makes a disparity that is evident, which results in the state of North Carolina not requiring the plaintiff to pay merely a fair share of the costs of local government, but it was enacting legislation obviously hostile or practically discriminatory towards interstate commerce. In the instant case the $15 per day occupation tax imposed by the city is within the orbit of state taxes on interstate commerce as being fair and reasonable, and there is no discrimination as between merchants outside the state and local merchants. We are not in accord with the appellees' contention in such respect. Considering the requirements of the ordinances in question of a nonresident merchant, the tax of $15 per day, plus a license fee of $1, the requirement of a $5,000 surety bond, medical certificates from a Nebraska physician, and a personal appearance to obtain the license before the city clerk, and in view of the fact that the appellants are subject to the same or similar taxes as the local merchant in the state in which the appellants are organized and have their principal place of business, and the further fact that in many cases with the same subject matter as in the instant

case taxes were struck down on a similar statement of facts involving payment of a less sum as occupation tax, we conclude that the distinction as contended for by the appellees between the instant case and Best & Co. v. Maxwell, *supra,* is without merit. The ordinances are discriminatory and unreasonable, in violation of the commerce clause of the Constitution of the United States which prohibits discriminatory regulation of interstate commerce, whatever may be its form or method. The ordinances challenged in this case are a clear attempt to regulate interstate commerce.

The appellees also contend that the same ordinance has been approved by the Supreme Court of this state, citing Erwin v. City of Omaha, 118 Neb. 331, 224 N. W. 692, where an ordinance imposing a tax of $15 a day for the privilege of operating a "rolling store" on the streets of the city was held to be a reasonable regulation, and the tax was held constitutional. The ordinance, although restrictive, was permissible because a municipality may impose taxes on local business that have a restraining or repressive effect, or even to prohibit the occupation or privilege. This case involved a local merchant, and a factual situation such as appears in the instant cases involving interstate commerce was not present. The case is not in point.

A review of the stipulated facts in the instant case shows that the appellants' activities in the city of Omaha were confined exclusively to soliciting orders for the sale of goods in another state which contemplated and necessarily required interstate shipment for their fulfillment. They constituted an integral part of interstate commerce and not a local or intrastate act separable therefrom and subject to taxation or licensing by the city of Omaha, especially as provided for by the ordinances in question. We conclude that the ordinances in question directly and unlawfully regulate and burden interstate commerce in violation of article 1, section 8, of the Constitution of the United States.

Other assignments of error have been presented but need not be determined in view of our holding.

The decree of the district court is hereby reversed and the cause remanded with instructions to enter a permanent injunction against the appellees, defendants below, restraining them from enforcing the ordinances in question against appellant Best & Co., Inc.

REVERSED AND REMANDED.