ROBERT L. GILBERT, ADMINISTRATOR OF THE ESTATE OF
SAMUEL M. KELLY, DECEASED, APPELLANT, V. THE FIRST
NATIONAL BANK, MINATARE, NEBRASKA, A BANKING
CORPORATION, APPELLEE, VERA FEIDLER,
INTERVENER-APPELLEE.

48 N. W. 2d 401

Filed June 7, 1951. No. 32986.

*Jack L. Raymond* and *Robert L. Gilbert,* for appellant.

*Atkins, Lyman & Ferguson,* and *Mothersead, Wright & Simmons,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff originally brought this action against The First National Bank of Minatare, hereinafter called the bank, to recover assets of the estate of Samuel M. Kelly, deceased. The petition substantially alleged that Samuel M. Kelly, also known as Sam Kelly, died intestate on October 29, 1949, at which time he had on deposit $1,775.13 in said bank payable upon his demand, and that plaintiff was appointed administrator of his estate on January 27, 1950. It alleged that although notified of his death on or about the date it occurred, the bank subsequently, without authority, paid out all of such money and, upon demand made by plaintiff on March 21, 1950, the bank refused to pay him any sum whatsoever.

Thereafter, defendant bank filed a motion to make Vera Feidler a party defendant, for the reason that she was a necessary party and claimed an interest in the subject matter of the action by reason of a survivorship account created by Sam Kelly and Vera Feidler. After a hearing the motion was sustained, and plaintiff was directed to file an amended petition making her a defendant. Thereafter plaintiff filed an amended petition reciting substantially the allegations of his original petition and adding: "That the plaintiff has been advised by the defendant Bank that said moneys were paid to Vera Feidler."

Upon the filing thereof, Vera Feidler filed a motion for leave to intervene and set up a claim to a part of the money claimed by plaintiff for the reason that she drew

a part of such funds from defendant bank and used them to pay lawful claims against the estate. Leave was granted, and she filed a petition in intervention, considered also by the parties as an answer, alleging in substance that after the death of Sam Kelly she withdrew $1,140.66 from the account which had been deposited in the name of Sam Kelly or Vera Feidler in case of death, for payment of certain specific charges which would have been proper claims against his estate, and that defendant bank paid $250 to Glenn Kelly on a check not drawn by intervener but by Sam Kelly during his lifetime. She admitted that she thereafter withdrew the balance of the deposit and placed it in another account, and offered to confess judgment therefor in favor of plaintiff. She alleged that if the bank wrongfully paid out the deposit, that she was also liable with the bank therefor, except the $250 aforesaid, and that she was entitled to a set-off for the amount withdrawn and paid for the benefit of the estate. Her prayer was for such relief, and for such other and further relief as might be just and equitable.

Plaintiff's motion thereafter filed, to strike the paragraphs of intervener's petition relating to payment of such claims for the benefit of the estate, and the prayer thereof, was overruled. In that connection, plaintiff in this appeal assigned such action by the trial court as error, but since such assignment was not contained in plaintiff's motion for new trial, it will not be considered here. Plaintiff then answered, denying generally.

The defendant bank answered plaintiff's amended petition, denying generally, but admitting the date of Sam Kelly's death and notice thereof, and admitting that on that date deceased had $1,775.13 on deposit with it, payable on his demand. In that connection, it alleged, however, that the deposit was in the name of "Sam Kelly or Vera Feidler, in case of death only" and that the bank and Vera Feidler, both mistakenly and without advice of counsel, construed said deposit to be

a survivorship account whereby the funds lawfully became the exclusive property of Vera Feidler upon the death of Sam Kelly, after which Vera Feidler withdrew all of said funds except the sum of $250 paid by the bank to Glenn Kelly, a son of deceased, upon a check given to him and signed by Sam Kelly prior to his death, the payment of which check was made at the request of the widow of deceased. It alleged that if the bank wrongfully paid out moneys from the account to Vera Feidler, then she was liable with the bank for such withdrawal, and if she paid out $1,140.66 for the benefit of the estate as alleged in her petition in intervention, it should be set off as just claims against the estate, and for such other and further relief as might be just and equitable. Plaintiff's reply denied generally the allegations of such answer. The defendant bank also answered the petition in intervention, alleging substantially the same facts as in its answer to plaintiff's amended petition, and prayed for like relief. Prior to the introduction of any evidence, plaintiff's motion for judgment on the pleadings was overruled, and intervener offered to confess judgment for $384.47.

All of the evidence was stipulated. It was in substance that Samuel M. Kelly, also known as Sam Kelly, died intestate on October 29, 1949; that plaintiff was appointed administrator of his estate; that on October 29, 1949, deceased had $1,775.13 on deposit in defendant bank payable upon his demand; that on March 21, 1950, plaintiff demanded payment thereof which was refused, the bank having theretofore paid all of it to Vera Feidler, except $250 paid on December 10, 1949, to Glenn Kelly on a check, exhibit No. 3, dated August 25, 1949, signed by Sam Kelly in his lifetime; that Vera Feidler if present would testify, subject to plaintiff's objection as to competency and materiality, that certain checks, totaling $1,140.66, appearing in the record as exhibit No. 2, drawn by her payable to the persons named thereon, and paid by the bank, were in payment of funeral expenses, last

illness, and other debts of Samuel M. Kelly. In that connection, plaintiff assigned as error the admission of exhibit No. 2 in evidence, but since no such assignment was contained in his motion for new trial, it will not be considered here.

It was also stipulated that exhibit No. 1, the signature card for the checking account involved, should be received in evidence, which disclosed that it was dated August 28, 1945, and that the title of the account was Sam Kelly or Vera Feidler "in case of death only." It was agreed that Vera Feidler signed the exhibit subsequent to August 28, 1945, sometime during 1949, in the presence of Sam Kelly, and an employee of the bank.

The trial court in its decree found and adjudged that deceased, on the date of his death, had $1,775.13 on deposit in defendant bank subject to payment on his order; that, however, in the fall of 1949, prior to his death, Sam Kelly and Vera Feidler, by exhibit No. 1, attempted to create a survivorship account, which failed because in law it was testamentary in character. It found that nevertheless, through mistake of law, defendant bank and Vera Feidler construed the account as creating a survivorship subject to withdrawal by her after the death of Sam Kelly and before the appointment of plaintiff as administrator, who made no claim to such funds until March 21, 1950. Thus Vera Feidler drew, and the bank paid, checks on the account to third persons in the total amount of $1,140.66 for the payment of debts, funeral expenses, and last illness of deceased, all of which would have been proper claims against the estate, and that intervener also withdrew $384.47 for herself, for which she offered to confess judgment. It found that defendant bank, without authority, paid to Glenn Kelly $250 after the death of Sam Kelly on a check given by him prior to his death. It found that defendant bank and intervener were entitled to set off $1,140.66 against the total deposit, which was properly ordered paid and was paid by them for items that would have been just

claims against the estate. It found that both defendant bank and intervener acted in good faith and the bank received no benefit by said transactions and that intervener received for her benefit only $384.47.

Therefore, plaintiff was given a judgment against the bank for $250 with interest at 6 percent from October 29, 1949, and against intervener for $384.47 with interest at 6 percent from October 29, 1949. The record discloses that those amounts, with interest, were respectively thereafter paid to the clerk of the district court on December 6, 1950, and April 2, 1951. There is no controversy here by anyone with respect to such sums.

Plaintiff's motion for new trial was overruled, and he appealed, assigning substantially, insofar as important here, that: (1) The court erred in requiring plaintiff to make Vera Feidler a party defendant; (2) erred in refusing to sustain plaintiff's motion for judgment on the pleadings; and (3) that the judgment was not sustained by the evidence but contrary thereto and contrary to law. We conclude that the judgment was not sustained by sufficient evidence, but that the other assignments have no merit.

The first assignment, if erroneous, was without prejudice to plaintiff, since, as hereinafter observed, Vera Feidler did have a right to intervene and properly did so. That contention, therefore, does not require further discussion.

With regard to the second assignment, the rule is that a motion for judgment on the pleadings admits facts well pleaded or admitted but does not admit conclusions of law, and it is only where, upon statements in the pleadings, one party is entitled by law to judgment in his favor, that judgment should be so rendered by the court. State ex rel. Nebraska State Bar Assn. v. Wiebusch, 153 Neb. 583, 45 N. W. 2d 583. In the light of such rules, the pleadings, and propositions of law hereinafter discussed, we conclude that the court properly refused to sustain plaintiff's motion for judgment on the

pleadings. Thus, the second assignment has no merit.

Plaintiff argued that intervener had no right or authority to seek any relief in the cause and that if she did, her petition in intervention changed the issues, which intervener had no right to do.

The rule is that one having an interest in the result of pending litigation may intervene as a matter of right by virtue of section 25-328, R. R. S. 1943. Allen v. City of Omaha, 136 Neb. 620, 286 N. W. 916. In that connection, intervener must factually plead some interest in the subject matter of the litigation as distinguished from a mere denial of the rights of plaintiff or defendant. The interest in a matter in litigation which will authorize a person to so intervene must be such a direct and immediate interest that the person or persons seeking to intervene will either lose or gain by the direct operation and legal effect of the judgment which may be rendered in the action. Such an interest must be one arising from a claim to the subject matter of the action or some part thereof, or a lien upon the money or property or some part thereof as distinguished from an indirect, remote, or conjectural interest in the result of the suit which is not enough to permit intervention. Cornhusker Electric Co. v. City of Fairbury, 131 Neb. 888, 270 N. W. 482.

We conclude that intervener did have a right to intervene, and the trial court properly permitted her to do so.

The question then arises whether or not by intervention she changed the issues. The general rule is that: "An intervener who is not an indispensable party cannot change the position of the original parties or change the nature and form of the action or the issues presented therein." State ex rel. Nelson v. Butler, 145 Neb. 638, 17 N. W. 2d 683. As concluded in that opinion, interveners are ordinarily entitled to present only issues, as distinguished from facts, which sustain or oppose the respective contentions of the plaintiff and

defendant, or either of them. The issue presented here was simply whether or not the administrator was entitled to the deposit involved or any part thereof as assets of the estate. That issue was not changed by intervener's petition. It simply pleaded facts which, if appropriately established, would defeat plaintiff's right to all of the deposit, and being germane, squarely met the issue actually presented.

Only recently, in Rose v. Kahler, 151 Neb. 532, 38 N. W. 2d 391, following Lenderink v. Sawyer, 92 Neb. 587, 138 N. W. 744, L. R. A. 1915D 948, Ann. Cas. 1914A 261 and notes, this court held: "The true representative is bound by those acts of an executor de son tort which are lawful and such as the true representative would be bound in any event to perform in the due course of administration.

"Although an executor de son tort cannot by his own wrongful act acquire any benefit, yet he is protected in all his acts not for his own benefit which a rightful representative might do.

"An executor de son tort is liable to the lawful representative or a creditor, either in an action at law for conversion, or in equity for an accounting, for all the assets of the estate he received, except such as were used in payment of such demands as he affirmatively shows were just claims against the estate, and such payments for the use and benefit of distributees as would have been made in due course of administration." See, also, Dame, Probate and Administration (3d ed.), § 274, p. 292. Dobney v. Chicago & N. W. Ry. Co., 120 Neb. 824, 235 N. W. 585, relied upon by plaintiff, is clearly distinguishable upon the facts and applicable law.

Under the issues presented, intervener, as an executor de son tort, came squarely within the foregoing rules with regard to $1,140.66 of the deposit, which she could, if the proof were sufficient in that regard, set off against the claim of plaintiff.

In that connection, Rose v. Kahler, *supra*, and Lend-

erink v. Sawyer, *supra,* concluded that an executor de son tort, when attempting to assert such a set-off, has the burden of affirmatively showing that he has applied the assets of the estate which have come into his hands, in the same manner in which they would have been lawfully applied by a rightful representative. In other words, he assumes the burden of producing competent evidence that would be sufficient to prove such claims in administration or probate proceedings in case of objection, and that they would have been required by law to have been paid in any event in the same amount, order of preference, and manner by the representative. No such showing was made by intervener or defendant bank in the case at bar. Whether the estate was solvent and the debts were all payable as provided in section 30-614, R. R. S. 1943, or insolvent and there was a limitation or preference requirement as provided by section 30-615, R. R. S. 1943, is not shown by the record. Also, concededly, the widow survived deceased. Whether or not there were other claims or debts and whether or not there was property or money other than the deposit involved to take care of such debts if existent, and the widow's allowances and exemptions, if demanded, do not appear in the record as now before this court.

For the foregoing reasons the judgment of the trial court was not sustained by sufficient evidence. We turn then to consideration of the status of defendant bank in the litigation.

In that connection, this court held in Fender v. Reed, 143 Neb. 911, 12 N. W. 2d 98: "The doctrine of subrogation is not administered by courts of equity as a legal right, but the principle is applied to subserve the ends of justice and to do equity in the particular case under consideration. It does not rest on contract, and no general rule can be laid down, which will afford a test in all cases for its application. Whether the doctrine is applicable to any particular case depends upon the peculiar facts and circumstances of such case."

It is well established that: "One advancing money to an executor or administrator which is applied to the payment of debts for which the estate is bound may be subrogated to the place of the executor or administrator. But reason, as well as sound policy, requires that it should be shown by the clearest evidence that the estate has been benefited, or, in other words, that the money has been applied beneficially and in the payment of the debts." 25 R. C. L., Subrogation, § 25, p. 1342. See, also, notes 99 Am. S. R. 491; 11 Ann. Cas. 678. In that connection, however, it must be remembered that the only equity of such a subrogee arises in case the money advanced has in fact been applied to the payment of debts for which the estate was justly and legally bound. In such case, the creditor of the administrator will be permitted to take his place, and will be subrogated to his rights. A fortiori, the rule applies as well where money is advanced or paid to an executor de son tort or a creditor of the estate and applied by him to payment of debts of the estate for which the estate was justly and legally bound, since in such a situation it was in fact paid to the estate.

As stated in 24 C. J., Executors and Administrators, § 1210, p. 443: "Advances by third persons to the representative for the purpose of paying the debts of an estate ordinarily create only a personal liability on the part of the representative; but, in cases where the representative is entitled to reimbursement from the estate for the debts paid by him, equity will subrogate the person advancing the money to the rights of the representative and allow him to be repaid directly from the estate, but only to the extent that the money advanced has been actually used in the payment of debts for which the estate was legally bound. While payments by third persons directly to creditors of an estate are not favored, reimbursement will generally be allowed where the payments are made in good faith and for the benefit of the estate, * * *." See, also, 60 C. J., Subrogation, § 36,

p. 725; 34 C. J. S., Executors and Administrators, § 463, p. 333; 50 Am. Jur., Subrogation, § 41, p. 709.

We therefore conclude that defendant bank may be entitled to a set-off by way of subrogation. In other words, if defendant bank, not voluntarily but innocently and in good faith, by mistake of law, believing it was its legal duty to do so, paid out the $1,140.66 here involved, upon checks drawn by the intervener to pay debts of the estate, it would become entitled by subrogation to any rights which it may be ultimately established that the intervener had against the plaintiff administrator. As a matter of course, the bank, as such subrogee, could acquire no greater rights than the intervener had, to whose rights it succeeded at the time such payments were made by it. In other words, a party cannot acquire by subrogation any rights not possessed by the party whose rights are subrogated. Metropolitan Casualty Ins. Co. v. First Nat. Bank, 139 Neb. 329, 297 N. W. 593; American Surety Co. v. School District, 117 Neb. 6, 219 N. W. 583; Federal Land Bank v. Worley, 135 Neb. 493, 282 N. W. 476.

If intervener actually paid debts of the estate which would permit her as executor de son tort to set them off against the claim of the plaintiff, then it would be unjust to require defendant bank, who furnished her the money with which such payments were made, to unjustly enrich the estate by paying them again. Therefore, in the light of the foregoing discussion and the pleadings heretofore summarized, we conclude that plaintiff's motion for judgment on the pleadings was properly overruled.

The district court having acquired jurisdiction of the parties, the whole subject matter was presented to it for adjudication in one action by a single decree. To hold otherwise would but encourage a multiplicity of actions with added costs, and permit the parties to toy with courts and justice.

For the reasons heretofore stated, we conclude that

the judgment of the trial court should be and hereby is reversed and the cause is remanded for a new trial in conformity with this opinion.

REVERSED AND REMANDED.