GEER-MELKUS CONSTRUCTION COMPANY, INC., A CORPORA-
TION, APPELLEE, v. HALL COUNTY MUSEUM BOARD,
APPELLEE, COUNTY OF HALL, STATE OF NEBRASKA,
INTERVENER-APPELLANT.

185 N. W. 2d 671

Filed April 2, 1971. No. 37556.

Robert E. Paulick and Cunningham & Blackburn, for intervener-appellant.

Prince, Lauritsen & Baker for appellee Geer-Melkus Constr. Co.

Cronin & Shamberg, for appellee Hall County Museum Board.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SPENCER, J.

This action was originally filed by Geer-Melkus Construction Company, Inc., hereinafter referred to as Mel-

kus, against Hall County Museum Board, hereinafter referred to as Museum, praying for judgment for a balance due on construction costs. Museum answered, demanding that Melkus be put on strict proof and requesting the court to make a determination and declare the powers granted to it under section 51-506, R. R. S. 1943, and specifically to determine whether or not tax revenue may be expended for museum construction purposes.

The County of Hall, hereinafter referred to as County, sought to intervene in the action. This right was denied but County was subsequently granted the right to intervene on the matter of the enforcement of the judgment entered in favor of Melkus. Judgment was entered for $217,698.54. Thereafter County filed an answer, contesting the right of Museum to use tax funds for construction purposes. After a hearing the trial court dismissed the petition in intervention and held Museum was required to pay the judgment from its tax revenue. County has appealed.

The proceeding to establish Museum was initiated by a letter from Leo B. Stuhr to the board of supervisors of Hall County, hereinafter referred to as County Board, suggesting that he felt a great need for the establishment of an historical museum in the county and that he was sure a great majority of the citizens of County shared his view and would contribute to the erection and establishment of such a museum, and that an adequate museum building in his opinion could be constructed for a sum around $100,000. He thereupon offered to donate approximately 35 acres of land and $25,000, provided there should be pledged by public subscription a sum of at least $100,000 for the erection of the building, and that the voters of Hall County should vote to establish a county museum. The County Board accepted Stuhr's offer by the following resolution dated September 2, 1960, which, so far as material herein, provides: "The Hall County Board of Supervisors, in regular session assembled at the Courthouse in Grand

Island, Hall County, Nebraska, this 2nd day of September, 1960, adopted the following:

"WHEREAS, by letter under date of June 20, 1960, Leo B. Stuhr did offer to the County of Hall, State of Nebraska, a tract of land of about 35 acres being a part of the farm known as Stuhr Farm and did offer the sum of $25,000.00 cash, provided the residents of Hall County, voluntarily by public subscription, pledge and provide $75,000.00, said land to be used as a site for a historical museum or pioneer settlement and said money to be used for erection of a museum building thereon,

"AND WHEREAS, according to Section 51-501 to 51-512, inclusive, Revised Statutes of Nebraska, 1943, 1959 Cumulative Supplement, the law requires before establishing such county museum or levying tax for the maintenance of said museum, that the County Board submit the question to the voters of Hall County and must receive authorization for a levy by a majority of the voters voting at said election,

"NOW, THEREFORE, BE IT RESOLVED that the County Clerk of Hall County, Nebraska, place on the ballot to be voted on by the voters of the County of Hall at the general election, November 8, 1960, the question of establishing a Hall County Museum to be constructed by public subscriptions and to levy a tax for the maintenance of said museum thereafter."

This proposition was submitted to the voters in the following language: "To establish a Hall County, Nebraska Museum *to be constructed by public donated funds and to levy a tax for the maintenance of said museum thereafter.*" (Italics supplied.)

The proposition as submitted was approved by the voters, and County Board appointed a Museum Board, hereinafter referred to as Board. Leo B. Stuhr was appointed as one of the members and served as its president until his death. Stuhr, who died in 1961, left the bulk of his estate of approximately $700,000 to Museum. S. N. Wolbach has been the president of Board since

May 1961. After May 1961 Board hired a director and established him in an office in Grand Island. Subsequently, Board employed a New York architect to draw the plans for a museum to cost not to exceed $500,000. When bids were received on the plans submitted, they ranged from a low of $941,000 to a high of $1,700,000. All bids were rejected.

Melkus, who was a local contractor, submitted the low bid. After the bids were rejected, Board asked the architect to meet with Melkus to see how the plans could be changed to reduce the construction cost to $600,000. The architect submitted a revised figure of $668,000, and Board agreed on a working figure of $670,000, and decided to let the contract in phases to Melkus without taking new bids. The record would indicate that the total construction cost was $760,000, exclusive of the cost of land, architect fees, landscaping, road, parkways, or dirt moving. The museum was not constructed on the Stuhr land, but was constructed on other land purchased through the Grand Island Industrial Corporation for $70,000. The Stuhr land was sold for $118,000. After construction, Melkus claimed a balance due of $189,172.87 on the construction contract. This amount, plus interest, is the basis of the judgment entered in the amount of $217,698.54.

The questions we consider herein are: The right of the County to intervene; whether or not Museum was validly established; and if so, whether or not the mill levy may be used to pay construction costs.

On the question of the right to intervene, we have consistently interpreted section 25-328, R. R. S. 1943, to provide that anyone having an interest in the result of pending litigation may intervene as a matter of right. Gilbert v. First National Bank, 154 Neb. 404, 48 N. W. 2d 401. The interest required as a prerequisite of intervention is a direct and legal interest of such character that the intervener will lose or gain by the direct operation and legal effect of the judgment which may be

rendered in the action. Noble v. City of Lincoln, 158 Neb. 457, 63 N. W. 2d 475.

While the question as to the use of funds by Museum would purportedly be settled by the court's judgment, the question of the availability of tax funds for the satisfaction of the Melkus judgment is in the hands of the County Board and would require further litigation. The following from Best & Co., Inc. v. City of Omaha, 149 Neb. 868, 33 N. W. 2d 150, is pertinent herein: "The applicable principle of law is expressed in First Trust Co. v. Airedale Ranch & Cattle Co., 136 Neb. 521, 542, 286 N. W. 766, quoting from Madison Avenue Baptist Church v. Baptist Church in Oliver Street, 73 N. Y. 82, 95: 'It is the practice of courts of equity, when they have once obtained jurisdiction of a case, to administer all the relief which the nature of the case and the facts demand, and to bring such relief down to the close of the litigation between the parties.' "

When Museum filed its answer to the action of Melkus, it prayed that: "* * * the Court herein make a determination and declare the powers granted to the Museum Board of Hall County, Nebraska, under Section 51-506 of the Revised Statutes of Nebraska, 1943, Reissue of 1968, and specifically determine whether or not under such Statute, tax revenues collected for museum purposes may be expended for museum building purposes and for such other, further and additional orders as may be proper in the premises." Further, Museum in its answer set out that the Attorney General had given an opinion that tax funds could not be used by Museum for the purposes of construction of a museum, for which reason Museum had been unable to pay the balance due Melkus. The burden of defending the issue raised by the answer of Museum was carried by County. The trial court, after submission of the case, stated that he could not see how County could be affected by use of tax money to pay the construction judgment, erroneously dismissed the petition in intervention, and held Museum

could use tax funds for the payment of the judgment.

While section 51-506, R. R. S. 1943, gives Board exclusive control of expenditures of all money collected or donated to the credit of the Museum fund, section 51-509, R. R. S. 1943, requires Board to make a report to County Board as to the condition of its trust on June 1 of each year, showing all money received or expended, and giving a general report of all of its activities as well as any information and suggestions it deems of general interest, or as County *may* require. It is to be noted that by virtue of section 51-501, R. R. S. 1943, the County Board *may* levy a tax of not more than 2 mills upon the assessed value of all taxable property in the county. This levy is to be based on the report of Board, and may be in the amount determined by the County Board, not to exceed 2 mills. In this respect, the powers of County Board are distinguishable from those involved in many of the cases cited by appellees, such as State ex rel. Agricultural Extension Service v. Miller, 182 Neb. 285, 154 N. W. 2d 469. We hold County had an interest in the result of the pending litigation and had standing to intervene on the question as to whether proceeds from the tax levy could be used to pay the Melkus judgment for construction costs.

This brings us to the question as to whether or not Museum was validly established. We call attention to section 51-501, R. R. S. 1943, which provides that County Board "* * * shall have the power to establish a museum for the use of the inhabitants of such * * * county * * * or to contract for the use of a museum already established; * * *." We interpret this language as being sufficiently broad to permit County Board to provide for the establishment of a museum to be constructed by public donated funds, and to levy a tax for the maintenance of the museum thereafter. If County Board can contract for the use of an established museum, it is logical to hold it may accept one to be constructed by donated funds and have it established as a county

museum. We do not agree with appellees that under the statute the duties of the County Board are ministerial only. The word "may" in sections 51-501 and 51-509, R. R. S. 1943, denotes discretion.

Unless County Board had authority to submit the proposition as limited, the election would be null and void. We said in Drummond v. City of Columbus, 136 Neb. 87, 285 N. W. 109, voters at an election are entitled to such information as will enable them to consider, weigh, discuss, and vote upon the actual merits of a proposition. If unfounded facts are set out which obscure the issues or mislead the voters on material questions of fact, the election will be held to be null and void. The election to establish Museum was essentially one to accept as the Hall County Museum a museum to be constructed by public donated funds. The voters were asked to vote for the establishment of such museum as the Hall County Museum, and to authorize the levy of a tax for its maintenance thereafter. We hold the language "Museum to be constructed by public donated funds" was a very substantial inducement to the voters to encourage them to vote for the estabishment of Museum and for its future maintenance. The voters could not by any conceivable interpretation have understood they were voting to provide tax funds to construct a museum. To so hold would be a material variance, because the levy is limited to maintenance by the ballot and would constitute a fraud upon the voters. This we refuse to do.

We do not discuss nor reach any issue on the cost of the museum. Melkus in its brief states: "* * * at the time the museum was established no one envisioned the size, the elegance and splendor, nor the size and extent of the project." With this we agree. The suggested cost when presented to the voters was $100,000. We merely point out that the museum was to be constructed with public donated money and not with tax funds. This action is concerned with the use of tax money for costs of construction. While Museum has exclusive control of funds

raised for the support and maintenance of the museum, it has no power to use tax money to pay construction costs, and to do so would be an illegal use of those funds. We hold that tax funds cannot be used for construction purposes, because the vote establishing Museum limited the tax levy to the maintenance of a museum constructed by public donated funds.

There is no merit to appellees' claim of estoppel. County is not denying the establishment of Museum. It is contesting Board's right to use tax money to pay construction costs. The County Board sets the amount of the tax levy, based upon the needs of Museum. As the statute reads, the County Board has discretion in determining what needs will be met within the statutory limit. County was not a mere interloper as contended by Melkus, but had the right to raise the question of illegality of the use of tax funds authorized by County Board under section 51-501, R. R. S. 1943.

Melkus infers that the judgment can be paid by a special tax levied pursuant to section 77-1619, R. R. S. 1943. This issue is not before us, so while we may doubt the applicability of that section on the facts herein, we express no opinion thereon.

For the reasons given, we reverse the judgment of the trial court and remand the cause for the entry of a judgment in accordance with this opinion.

REVERSED AND REMANDED.

BOSLAUGH, J., dissenting.

The trial court found that the intervener had failed to plead or prove any facts evidencing an interest in the matter in litigation which would support intervention. This finding is sustained by the record. The judgment dismissing the petition in intervention and the answer of the intervener should be affirmed.

McCOWN, J., joins in this dissent.

McCOWN, J., dissenting.

The museum involved here was established under the authority of specific statutes. §§ 51-501 to 51-512, R. R.

S. 1943. Those statutes provide that two issues shall be submitted to the voters: (1) Whether the county museum shall be established, and (2) whether a tax of not more than 2 mills on the dollar shall be levied for the museum. See § 51-501, R. R. S. 1943.

The museum board here was duly appointed by the county board of Hall County after approval of the establishment of the museum and the levy of the tax by the voters. Section 51-506, R. R. S. 1943, specifically provides: "The museum board shall have exclusive control of expenditures, of all money collected or donated to the credit of the museum fund, of the renting *or construction* of a museum building and the supervision, care, and custody of the grounds, rooms, or buildings constructed, leased, or set apart for that purpose."

Because the county board here inserted the words "to be constructed by public donated funds" in the proposition submitted to the voters, the majority opinion holds that the addition of those words limited the statutory power of the museum board and restricted the use of tax funds to maintenance only. This is neither justified by the statute nor by any realistic approach to policy issues involved in the determination. If a museum was established here, the museum board had the powers granted by statute. No more and no less. The majority opinion limits the powers of a statutorily created body by judicial interpretation even when the maximum tax burden remains unaffected, and was clearly assumed by the voters. When such action also destroys the right of a contractor, dealing in good faith, to recover from a public body authorized to contract with it, the rule adopted by the majority assumes alarming proportions.

The record reveals that the museum board has received total donated funds greatly exceeding the total of tax funds received. Either there was never a legal museum formed here or the museum board has all the power granted by the statute under which the museum was established.