BEST & COMPANY, INC., v. A. J. MAXWELL, COMMISSIONER OF REVENUE.

(Filed 16 June, 1939.)

**1. Constitutional Law § 3b—**

The Federal Constitution is a grant of powers, and powers not therein granted nor prohibited by it to the States are reserved to the States or to the people. Tenth Amendment of the Federal Constitution.

**2. Taxation § 7—Tax on display of samples in hotel room or temporarily occupied house held not void as burden on interstate commerce.**

The provisions of ch. 127, sec. 121 (e), of the Revenue Act of 1937 imposing a tax upon the display of samples of goods in a hotel room or temporarily occupied house for the purpose of securing orders for the retail sale of such goods by any person, firm or corporation not a regular retail merchant in the State does not impose a burden upon interstate commerce and is valid, since the tax is imposed alike upon residents and nonresidents engaged in the activity defined and is a use tax levied upon the local use of hotel rooms and temporarily occupied houses for the purpose of promoting retail sales by persons not otherwise taxed as retail merchants, and since the activity taxed is a preliminary and nonessential activity transpiring prior to the securing of orders for interstate shipment, in which activity the seller may or may not engage at his election.

SEAWELL, J., took no part in the consideration or decision of this case.

STACY, C. J., dissents.

APPEAL by defendant from *Frizzelle, J.,* at 16 January Term, 1939, of WAKE. Reversed.

This is a civil action to recover $250.00 in taxes paid defendant under protest, by virtue of ch. 127, sec. 121, subsec. e (Revenue Act, 1937), of the Public Laws of 1937. It is agreed by the parties that plaintiff is not a regular retail merchant in North Carolina and has no regular place of business in this State; but that plaintiff is a New York corporation having its principal office in New York City. It is likewise agreed that just prior to 9 February, 1938, plaintiff rented for several days a display room in the Robert E. Lee Hotel, in Winston-Salem, and there displayed samples and secured retail orders for merchandise, later filled by shipment from the New York office, and that the tax here in dispute was levied upon this activity of plaintiff.

From a judgment for the plaintiff in the sum of $250.00, with interest, defendant appealed to this Court. The only exception and assignment of error is to the signing of the judgment.

*Manly, Hendren & Womble and W. P. Sandridge for plaintiff.*
*Attorney-General McMullan and Assistant Attorneys-General Bruton and Wettach, and Bailey & Lassiter, amicus curiæ, for defendant.*

BEST & CO. *v.* MAXWELL, COMR. OF REVENUE.

CLARKSON, J.  The only question raised by this appeal: Is the State tax upon the display of samples, goods, etc., (a) in a hotel room, or house rented or occupied temporarily, (b) for the purpose of securing orders for the retail sale of such goods, etc., (c) by a person, firm or corporation, not a regular retail merchant in the State, invalid as violative of the Commerce Clause of the Constitution of the United States, Art. I, sec. 8 (3)?  We think not.

The act is not challenged as violative of any other provision of either the State or Federal Constitutions.  The single question presented for our determination: Does the facts in this case violate the constitutional grant to Congress of the power "to regulate commerce with foreign nations and among the several states and with the Indian tribes?"  This clause, and the remainder of the Federal Constitution, is significantly lacking in any prohibition of the taxation of commerce carried on within the borders of any state, and the right of the state to tax such intrastate commerce is not questioned.  Further, the Federal Constitution nowhere *expressly* prohibits the taxation of interstate commerce by a state, or even its direct regulation.  The Commerce Clause merely gives to Congress the power to "regulate" commerce among the states.  It is well to remember that the Federal Government is one of granted power only; the Tenth Amendment to the Constitution (and North Carolina would not ratify the Constitution until the Bill of Rights had been adopted) declares, "The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states, respectively, or to the people."  The "Commerce Clause" has come to be written in capital letters rather by reason of more recent judicial interpretation of the clause than by the clear, expressed intent of the constitutional fathers.  The express retention by the states of powers not delegated to the Federal Government argues strongly against the existence of any implied power of the Federal Government (growing out of the Commerce Clause) to strike down a state tax on commercial activity carried on within the borders of the taxing state.  Unless the implied prohibition of taxes definitely burdening interstate commerce (developed and given expression in *Robbins v. Taxing District,* 120 U. S., 489; *Real Silk Hosiery Mills Co. v. Portland,* 268 U. S., 325, and numerous interim cases) reaches to, and renders immune from state taxation, the commercial activity here taxed, the instant case represents a valid exercise of the state taxing power.  The Supreme Court of the United States has long recognized the force of these considerations and has heretofore indicated that implied prohibitions growing out of the Commerce Clause must, necessarily, be reluctantly and rarely applied. "Whatever amounts to a more or less constant practice, and threatens to obstruct or unduly to burden the freedom of interstate commerce is

within the regulatory power of Congress under the commerce clause, and it is primarily for Congress to consider and decide the fact of danger and meet it. This Court will certainly not substitute its judgment for that of Congress in such a matter unless the relation of the subject to interstate commerce and its effects upon it are clearly nonexistent." *Stafford v. Wallace,* 258 U. S., 495 (521); *Board of Trade v. Olsen,* 262 U. S., 1 (37); see, also, *Walton v. State of Missouri,* 91 U. S., 275. Nor, by the same standard, can it be presumed that the Supreme Court of the United States will substitute its judgment as to the valid exercise of a state legislature's taxing power for that of the state legislature, unless the tax act "clearly" and "unduly" burdens the "freedom of interstate commerce." ". . . Property within the state, privileges granted by the state, and intrastate commerce done within the state are uniformly held proper subjects of state taxation." Powell, "Indirect Encroachments on Federal Authority by the Taxing Powers of the States, 5 Selected Essays on Constitutional Law," at p. 391; also see pp. 418, 470.

It then becomes pertinent to determine whether it can be fairly said that the instant act, in this case, clearly constitutes a direct and undue burden upon interstate commerce. The measure is clear and concise; before it is applicable there must be the following requisites set forth in the law: (a) the act, *i.e.,* the display of samples, goods, etc., (b) the place, *i.e.,* in a hotel room or temporarily occupied house, (c) the mental element, or purpose, *i.e.,* for the purpose of securing orders for retail sale of the goods, etc., and (d) the person, *i.e.,* one not a regular merchant. In essence, the tax is one imposed upon anyone, not otherwise taxed as a retail merchant, who uses a North Carolina hotel room or temporarily occupied house, for commercial display purposes in the interest of retail sales. It is a use tax, levied in the State of North Carolina upon profitable and commercial activity which has otherwise escaped taxation and which, therefore, discriminates against no one but seeks to remove a discrimination previously existing against regular, taxed, retail merchants. Under this statute the act taxed must occur in North Carolina, and the room where the act transpires must be within the State. The taxed activity must be directed at the retail trade in North Carolina, seeking to reach personally the citizens and residents of this State. The measure does not in any way impinge upon the activities of the wholesale trade, nor does it discriminate against nonresidents. All citizens and residents of North Carolina, and nonresidents alike (other than retail merchants who have already been taxed for their commercial activities) who engage in the taxable activity are liable for the tax. The taxed act is a local one, involving the use of purely local property.

The tax in no way hampers the movement of the samples, goods, etc., or of the merchandise sold, in interstate commerce. The tax in no way regulates the interstate or out-of-state activity of the person seeking to sell by display in North Carolina, nor does it in any way interfere with sales by sample by house-to-house canvassers. Finally, the measure leaves open to the seller the choice as to the manner of soliciting retail sales by display; only when he seeks to localize his commercial activity by temporarily establishing himself at a particular rented and temporary location within this State in his activity in displaying samples and seeking orders subjected to taxation. Although such activity may be in the twilight zone of interstate commerce, it does not enter that enchanted realm. Although such displaying by sample may ultimately result in orders which will flow into interstate commerce, such commercial activity cannot cloak itself in immunity from taxation merely by calling the magic words, "Interstate Commerce." The use of North Carolina real estate for the purpose of displaying samples is commercially intended to result in interstate commerce, but this preliminary activity is merely a separate and distinct effort of the seller seeking, as in the instances of magazine and billboard advertising, to stimulate the desire for the seller's goods. *Western Livestock v. Bureau of Revenue,* 303 U. S., 250.

The display use of hotel rooms and temporarily rented property here taxed is not a usual, necessary, or essential part of a commercial, retail business. It is a preliminary and incidental activity which, at the election of the seller, may or may not transpire prior to the beginning of the flow of events which constitute the movement of goods in interstate commerce. There is a striking analogy here to production, which has consistently been held not to constitute interstate commerce. *Carter v. Carter Coal Co.,* 298 U. S., 238. As *Justice Brandeis,* speaking for the Court in *Chassaniol v. Greenwood,* 291 U. S., 584 (587), so aptly remarked with reference to ginning and warehousing cotton, these are but "steps in preparation for the sale and shipment in interstate or foreign commerce. But each step prior to the sale and shipment is a transaction local to Mississippi, a transaction in intrastate commerce." The use of North Carolina realty to display samples is likewise but a step "in preparation for the sale and shipment in interstate . . . commerce," and is essentially intrastate and local in nature. As was said by *Justice Bradley* in *Coe v. Errol,* 116 U. S., 517 (525), "There must be a point of time when they cease to be governed exclusively by domestic law and begin to be governed and protected by the national law of commercial regulation, and that moment seems to us to be a legitimate one for this purpose, in which they commence their final movement for transportation from the State of origin to that of their

destination." *Justice Bradley* was there speaking of certain logs hauled to a river, but if the orders sought by plaintiff is substituted as the *res* under consideration, the logic of the proposition is compelling that certainly not earlier than the actual placing of the orders with plaintiff can its commercial activity be considered as a part of interstate commerce. No phase of the question is better settled than the fundamental that the mere fact that the products of domestic enterprise are ultimately intended to become subjects of interstate commerce is not sufficient to stamp them with the immunities attaching to interstate commerce proper. *Kidd v. Pearson,* 128 U. S., 1 (21); *Heisler v. Thomas Colliery Co.,* 260 U. S., 245 (259); *Champion Refining Co. v. Corporation Commission,* 286 U. S., 210 (235).

The displaying of samples in temporary quarters, here taxed, was peculiarly a local and intrastate act, outside the realm of interstate commerce, because such term can "never be applied to transactions wholly internal, between citizens of the same community, or to a polity and laws whose ends and purposes and operations are restricted to the territory and soil and jurisdiction of such community." *Veazie et al. v. Moore,* 14 How., 568 (573). Such a local, business activity which is separate and distinct from the transportation and intercourse which is interstate commerce is not freed from state taxation "merely because in the ordinary course such transportation or intercourse is induced by the business." *Western Livestock v. Bureau of Revenue,* 303 U. S., 250 (253), and cases cited. In the same case, at p. 254, *Justice Stone,* speaking for the Court, reiterates the fundamental that, "It was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing the business. 'Even interstate business must pay its way. *Postal Telegraph-Cable Co. v. Richmond,* 249 U. S., 252 (259), 39 S. Ct., 265, 266, 63 L. Ed., 590," and other cases cited. In the *Western Livestock case, supra,* the state privilege tax was upheld under a view which we think equally applicable here, to wit, that "the burden on interstate business is too remote and too attenuated."

A casual reading of many of the recent pronouncements of the Supreme Court of the United States apparently indicates a gradual broadening of the Federal power over interstate commerce by liberalizing the definition of what falls within that category, with an accompanying, and even more desirable, broadening of the states' taxing power over matters touching the fringe of the garment of interstate commerce. This latter tendency is indicated by two complementary but distinct developments, the one marked by a narrowing of the compass of what constitutes a direct and undue burden on interstate commerce, and the other by a stricter and more rigid interpretation as to what constitutes discrimina-

tion against interstate commerce. See "Sales and Use Taxes: Interstate Commerce Pays Its Way," Warren & Schlesinger, 38 Col. Law Rev., 49 (Jan., 1938), for a collection of a number of these cases. These developments argue strongly for the validity of the instant tax.

In *Coverdale v. Pipe Line Co.,* 303 U. S., 604, a state tax upon the production of power to drive gas into interstate commerce was approved. The displaying of goods here taxed is merely a similar preliminary activity seeking to "drive" orders into interstate commerce. In *Nashville, C. & St. L. Ry. Co. v. Wallace,* 288 U. S., 249, a state tax on storage of gasoline brought into the state through interstate commerce and ultimately used directly in interstate commerce was upheld, such a tax being considered too remote and too indirect a burden upon interstate commerce to justify its being stricken down. Here we have a similar situation, a local, commercial activity within North Carolina which follows the arrival of plaintiff's representative and precedes the sending of any orders to plaintiff. In *Southern Pac. Co. v. Gallagher,* 59 S. Ct., 389 (decided 30 January, 1939), the California Use Tax was upheld as applicable to equipment bought out of the State and brought into the State for installation on interstate, transportation equipment; there *Justice Reed,* for the Court, found a "taxable moment" at the point where the goods came to rest in the State and before they were installed on the interstate equipment. In the instant case there is no need for such search for a taxable moment, as the taxed activity was clearly localized in North Carolina; the displaying of the samples was part of a carefully planned campaign, after an elaborate, personalized canvass by mail of large numbers of North Carolina citizens who were considered potential customers. As was pointed out in the *Gallagher case, supra,* "A tax on property or upon a taxable event in the state, apart from operation, does not interfere. This is a practical adjustment of the right of state to revenue from the instrumentalities of commerce and the obligation of the state to leave the regulation of interstate and foreign commerce to the Congress." Also, it was there said: "The taxable event is the exercise of the property right in California"; here the taxable event is the exercise of the temporary property right in the hotel room or rented house to display samples commercially for retail purposes. *Pacific Telephone & Telegraph Co. v. Gallagher,* 59 S. Ct., 396, a companion case decided on the same day, again approved the California Use Tax as applied to supplies brought into the State for use in interstate telephone and telegraph communication.

Even earlier, in *Eastern Air Transport, Inc., v. South Carolina Tax Commission,* 285 U. S., 147, and in *Henneford v. Silas Mason Co.,* 300 U. S., 577, the validity of the fundamental theory of the modern "use tax" had been approved; in the latter case, *Justice Cardozo,* for the

Court, used these significant words in concluding the opinion: "A legislature has a wide range of choice in classifying and limiting the subjects of taxation. *Bell's Gap R. Co. v. Pennsylvania,* 134 U. S., 232 (237); *Ohio Oil Co. v. Conway,* 281 U. S., 146 (159). The choice is as broad where the tax is laid upon one or a few of the attributes of ownership as when laid upon them all. *Flint v. Stone Tracy Co.,* 220 U. S., 107 (158-9). . . . Such questions of fiscal policy will not be answered by a court. The legislature might make the tax base as broad or as narrow as it pleased."

The courts have not been alone in noting the economic imperative that "interstate business must pay its way." Students of taxation have become increasingly aware that a judicial overemphasis upon the doctrine of immunity of interstate commerce from state taxation amounts to discrimination against intrastate business. Lutz, H. L., Public Finance, 3rd ed. (1936), p. 326. State tax administrators have found it difficult to reach taxpayers in interstate commerce even when the plain and obvious intent was to tax them on the same basis as those engaged in intrastate commerce. R. M. Haig, "The Coördination of the Federal and State Tax Systems," Proceedings of the National Tax Association (1932), p. 220; Marvel Stockwell, "The Coördination of Federal, State and Local Taxation," The Tax Magazine (April, 1938), p. 198-9. None too soon, perhaps, the Supreme Court of the United States appears to have adopted a new approach to the problem of state taxation as it relates to interstate commerce, an approach involving a new emphasis upon the preservation of equality of tax burden between competing business enterprises. See William B. Lockhart, "The Sales Tax in Interstate Commerce," 52 Harvard Law Review (Feb., 1939), p. 617.

The tax here discussed in a part of a comprehensive, state tax program designed to reach and to tax equally and fairly all types of commercially remunerative activity which has the protection of our laws. Local mercantile businesses, which for the most part are small, are subject to taxation; the commercial activity of plaintiff, which is a comparatively large business enterprise, has heretofore escaped taxation in the State. If this tax fails in its effort to secure from plaintiff its proportionate contribution in taxes for the privileges and protections which it enjoys within the State, the immunity of plaintiff from taxes in this State will be complete. The reasoning leading to such a result we do not find persuasive. We do not find in the grant of power to Congress to regulate interstate commerce any implied prohibition which strikes down the tax here levied. Rather do we find in the reservation to the State of powers not granted to the United States (U. S. Constitution, X Amendment), coupled with the retention in the people of this State of "all powers not delegated" by our Constitution (N. C. Constitution,

BEST & CO. *v.* MAXWELL, COMR. OF REVENUE.

Art. I, sec. 37), a mandate of organic law which is compelling in its implications. "In selecting the objects of taxation, in the classification of business and trades for this purpose, and in allocating to each its proper share of the expenses of government, the General Assembly has been given a wide discretion. The continued maintenance of government itself as a great communal activity in behalf of all the citizens of the State is dependent upon an adequate taxing power." *Tobacco Co. v. Maxwell, Commissioner of Revenue,* 214 N. C., 367 (371-2).

For the reasons given, the judgment of the court below is
Reversed.

SEAWELL, J., took no part in the consideration or decision of this case.

STACY, C. J., dissents.