## BEST & COMPANY, INC. *v.* MAXWELL, COMMISSIONER OF REVENUE OF NORTH CAROLINA.

No. 61. Argued November 22, 1940.—Decided December 23, 1940.

*Mr. Lorenz Reich, Jr.,* with whom *Mr. M. James Spitzer* was on the brief, for appellant.

*Mr. I. M. Bailey,* with whom *Messrs. Harry McMullan,* Attorney General of North Carolina, *T. W. Bruton,* Assistant Attorney General, and *W. C. Lassiter* were on the brief, for appellee.

MR. JUSTICE REED delivered the opinion of the Court.

Appellant, a New York retail merchandise establishment, rented a display room in a North Carolina hotel for several days during February, 1938, and took orders

for goods corresponding to samples; it filled the orders by shipping direct to the customers from New York City. Before using the room appellant paid under protest the tax required by chapter 127, § 121 (e), of the North Carolina Laws of 1937, which levies an annual privilege tax of $250 on every person or corporation, not a regular retail merchant in the state, who displays samples in any hotel room rented or occupied temporarily for the purpose of securing retail orders.[1]  Appellant not being a regular retail merchant of North Carolina admittedly comes within the statute.  Asserting, however, that the tax was unconstitutional, especially in view of the commerce clause, it brought this suit for a refund and succeeded in the trial court.  The Supreme Court of North Carolina reversed and then, being evenly divided on rehearing, allowed the reversal to stand.[2]  The prevailing opinion characterized the tax as one on the commercial use of temporary quarters, which in its operation did not discriminate against interstate commerce and therefore did not come into conflict with the commerce clause.

The commerce clause forbids discrimination, whether forthright or ingenious.[3]  In each case it is our duty to

---

[1] "(e) Every person, firm, or corporation, not being a regular retail merchant in the State of North Carolina, who shall display samples, goods, wares, or merchandise in any hotel room, or in any house rented or occupied temporarily, for the purpose of securing orders for the retail sale of such goods, wares, or merchandise so displayed, shall apply for in advance and procure a State license from the Commissioner of Revenue for the privilege of displaying such samples, goods, wares, or merchandise, and shall pay an annual privilege tax of two hundred fifty dollars ($250.00), which license shall entitle such person, firm or corporation to display such samples, goods, wares, or merchandise in any county in this State."

[2] 216 N. C. 114; 3 S. E. 2d 292; 217 N. C. 134; 6 S. E. 2d 893.

[3] *Welton* v. *Missouri*, 91 U. S. 275, 282–283; *Guy* v. *Baltimore*, 100 U. S. 434; *Webber* v. *Virginia*, 103 U. S. 344; *Hale* v. *Bimco Trading Co.*, 306 U. S. 375.  In *McGoldrick* v. *Berwind-White Co.*,

determine whether the statute under attack, whatever its name may be, will in its practical operation work discrimination against interstate commerce. This standard we think condemns the tax at bar. Nominally the statute taxes all who are not regular retail merchants in North Carolina, regardless of whether they are residents or non-residents. We must assume, however, on this record that those North Carolina residents competing with appellant for the sale of similar merchandise will normally be regular retail merchants. The retail stores of the state are the natural outlets for merchandise, not those who sell only by sample. Some of these local shops may, like appellant, rent temporary display rooms in sections of North Carolina where they have no permanent store, but even these escape the tax at bar because the location of their central retail store somewhere within the state will qualify them as "regular retail merchants in the State of North Carolina." The only corresponding fixed-sum license tax to which appellant's real competitors are subject is a tax of $1 per annum for the privilege of doing business.[4] Nonresidents wishing to display their wares must either establish themselves as regular North Carolina retail merchants at prohibitive expense, or else pay this $250 tax that bears no relation to actual or probable sales but must be paid in advance no matter how small the sales turn out to be. Interstate commerce can hardly survive in so hostile an atmosphere. A $250 investment in advance, required of out-of-state retailers but not of

309 U. S. 33, we pointed out that the line of decisions following *Robbins* v. *Shelby County*, 120 U. S. 489, read in their proper historical setting, rested on the actual and potential discrimination inherent in certain fixed-sum license taxes (pp. 55–57). There is no occasion now to reëxamine the particular tax statutes involved in those cases.

[4] North Carolina Laws of 1937, c. 127, § 405.

their real local competitors, can operate only to discourage and hinder the appearance of interstate commerce in the North Carolina retail market. Extrastate merchants would be compelled to turn over their North Carolina trade to regular local merchants selling by sample. North Carolina, regular retail merchants would benefit, but to the same extent the commerce of the Nation would suffer discrimination.

The freedom of commerce which allows the merchants of each state a regional or national market for their goods is not to be fettered by legislation, the actual effect of which is to discriminate in favor of intrastate businesses, whatever may be the ostensible reach of the language.[5]

*Reversed.*

---

[5] Cf. *Bacardi Corporation* v. *Domenech, ante,* pp. 150, 156–157.