CONTINENTAL ILLINOIS CORPORA-
TION, et al., Plaintiffs-Appellees,
Cross-Appellants,

v.

Gerald A. LEWIS, in his official capaci-
ties as Comptroller of the State of Flor-
ida and Head of the Department of
Banking of the State of Florida, De-
fendant-Appellant, Cross-Appellee.

CONTINENTAL ILLINOIS CORPORA-
TION and William D. Plechaty, et
al., Plaintiffs-Appellants,

v.

Gerald A. LEWIS, in his official capacity
as Comptroller of the State of Florida
and Head of the Department of Bank-
ing of the State of Florida, Defendant-
Appellee.

Nos. 85–3165, 85–3949.

United States Court of Appeals,
Eleventh Circuit.

Sept. 22, 1987.

Bowman Brown, Phillip G. Newcomm, Andrew L. Gordon, Lee D. Mackson, Shutts & Bowen, Miami, Fla., for Continental Illinois Corp.

Eric Joseph Taylor, Charles L. Stutts, Gen. Counsel, Albert T. Gimbel, Chief Banking Counsel, R. Michael Underwood, Asst. Gen. Counsel, Office of the Comptroller, Dept. of Banking & Finance, Tallahassee, Fla., for Lewis.

Before FAY and CLARK, Circuit Judges, and HENDERSON, Senior Circuit Judge.

PER CURIAM:

This appeal involves the constitutionality of certain Florida statutes which regulate the conduct and ownership of financial institutions within the state of Florida.

To afford a better understanding of the case, an overview of certain relevant history is necessary. In 1972 Bankers Trust New York Corporation ("Bankers Trust"), a New York corporation operating as a bank holding company, sought federal approval to operate an investment management subsidiary in Florida. The Federal Reserve System's Board of Governors ("Board") denied Bankers Trust's application, citing Fla.Stat. § 659.141(1) (amended 1980), which the Board concluded was intended to, and did, prohibit the performance of investment advisory services in Florida by non-Florida bank holding companies. Bankers Trust then instituted an action in the United States District Court for the Northern District of Florida seeking declaratory and injunctive relief. A three-judge district court concluded that § 659.-141(1)[1] was unconstitutional because it placed an unjustified burden on out-of-state businesses, in violation of the Commerce Clause of the United States Constitution. *BT Investment Managers, Inc. v. Lewis*, 461 F.Supp. 1187 (N.D.Fla.1978). The United States Supreme Court affirmed. *Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 100 S.Ct. 2009, 64 L.Ed.2d 702 (1980).

The Supreme Court issued its decision in *Lewis* on June 9, 1980. In July, 1980 the Florida legislature enacted Fla.Stat. § 658.-

---

1. This statute provided as follows:

 659.141 Control; ownership.—

 (1) Except as provided in subsection (3), no bank, trust company, or holding company, the operations of which are principally conducted outside this state, shall acquire, retain, or own, directly or indirectly, all, or substantially all the assets of, or control over, any bank or trust company having a place of business in this state where the business of banking or trust business or functions are conducted, or acquire, retain, or own all, or substantially all, of the assets of, or control over, any business organization having a place of business in this state where or from which it furnishes investment advisory services in this state. However, if a bank, trust company, or holding company directly or indirectly owning all, or substantially all, the assets of, or having control over, a bank or a trust company or business organization to which the restrictions and prohibitions of this section apply, having acquired such assets or control prior to becoming disqualified hereunder, shall, on or after the effective date of this section, be or become disqualified hereunder to acquire, retain, or own the same, the restrictions and prohibitions of this section shall not be enforced against it for a period which, under all the circumstances, is determined by the department to be reasonable, not exceeding 2 years from the effective date of this act or from the date it becomes disqualified hereunder, whichever is later, unless said period of 2 years is extended by the department as herein provided. The department is authorized, upon a showing of undue hardship, to extend said period of 2 years from time to time if it determines that any such extension would not be detrimental to the public interest, but any such extension shall not exceed 1 year and all thereof shall not in the aggregate exceed 3 years.

29,[2] section one of which is, in all pertinent ways, identical to § 659.141(1), previously declared unconstitutional. At the same time the legislature enacted Fla.Stat. § 664.03(3) which section extends the application of § 658.29 to cover industrial savings banks ("ISBs").[3]

On June 29, 1981, Continental Illinois Corporation ("Continental"), a bank holding company incorporated in Delaware with its principal place of business in Illinois, applied to the Florida Department of Banking & Finance for a charter to operate an ISB to be known as Continental Illinois Savings Bank of Dade County.[4] The defendant, Gerald A. Lewis, the Florida Comptroller, rejected this application, refusing to process it in reliance on the prohibition contained in § 664.03(3) against out-of-state ownership of in-state ISBs.

On August 6, 1981, Continental filed a complaint in the United States District Court for the Northern District of Florida, seeking a declaratory judgment that the two statutes, §§ 658.29 and 664.03(3), were unconstitutional, and also seeking injunctive relief. The district court granted summary judgment for Continental, finding that although § 664.03(3) was facially constitutional it was unconstitutional as applied to Continental. According to the district court this statute, through its prohibition of Continental's establishment of a non-bank in Florida, violated the Commerce Clause. The district court ordered Florida to process Continental's application. Lewis filed a motion to alter or amend the judgment pursuant to Fed.R.Civ.P. 59(e). During the pendency of this motion, the Florida legislature enacted a permanent moratorium on the issuance of charters for any additional ISBs in Florida, whether to be owned by in-state or out-of-state concerns. Fla.Stat. § 664.02(1) (1984) (amended in 1984 to include this moratorium). The defendant then filed a suggestion of mootness, contending that it now had no authority to grant the relief ordered by the district court. The district court refused to find the case moot, noting that final judgment had been rendered prior to the legis-

2. This statute states:

658.29 Certain ownership and control prohibited.

(1) Except as provided in subsection (3), no bank, trust company, or bank holding company, the operations of which are principally conducted outside this state, shall acquire, retain, or own, directly or indirectly, all, or substantially all, of the assets of, or control over, any bank or trust company having a place of business in this state where the business of banking or trust business or functions are conducted, or acquire, retain, or own all, or substantially all, of the assets of, or control over, any business organization having a place of business in this state where or from which it furnishes investment advisory services in this state. However, if a bank, trust company, or bank holding company directly or indirectly owning all, or substantially all, the assets of, or having control over, a bank or a trust company or business organization to which the restrictions and prohibitions of this section apply, having acquired such assets or control prior to becoming disqualified hereunder, becomes disqualified hereunder to acquire, retain, or own the same, the restrictions and prohibitions of this section shall not be enforced against it for a period which, under all the circumstances, is determined by the department to be reasonable, not exceeding 2 years from the date it becomes disqual-

ified hereunder, unless such period of 2 years is extended by the department as herein provided. The department is authorized, upon a showing of undue hardship, to extend the 2-year period from time to time if it determines that any such extension would not be detrimental to the public interest; but any such extension shall not exceed 1 year, and all extensions shall not in the aggregate exceed 3 years.

3. Industrial savings banks are considered "non-banks" because they operate under certain limitations not applicable to banks. For example, under federal law ISBs can accept only certain types of deposits and cannot make commercial loans. Their utility lies in the avoidance of certain federal regulations relating to banks. Specifically, as "non-banks" ISBs are not subject to § 3(d) of the Bank Holding Company Act of 1956, 12 U.S.C. § 1841, et seq. (1980 & West Supp. 1987) ("BHCA"), which prohibits a bank holding company from owning or establishing a "bank" outside its principal operating state, unless the acquisition is expressly authorized by statutory law of the state in which the proposed acquisition is located. Id., 12 U.S.C. § 1842(d).

4. Continental was joined in this application by the remaining plaintiffs below. All plaintiffs will be referred to collectively as "Continental."

lature's amendment of § 664.02 and, additionally, holding that the issues are "capable of repetition, yet evading review," citing *Southern Pac. Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310, 316 (1911).

In this appeal the defendant seeks the dismissal of the appeal as moot or, alternatively, a reversal of the district court's determination that § 664.03(3) is unconstitutional as applied. On cross-appeal Continental asks this court to declare § 664.02 either unconstitutional or inapplicable, and also challenges the district court's holding that § 664.03(3) is facially constitutional. Finally, Continental seeks a reversal of the district court's denial of its motion for attorney's fees.

*Section 664.02.*

Lewis contends that Fla.Stat. § 664.02, as a statutory ban on the issuance of charters for new ISBs, renders this entire controversy moot. This issue of mootness hinges, of course, on whether the amendment to § 664.02 is constitutional. If constitutional, then we agree with the defendant that the statute precludes effective relief and moots the case. *C & C Products, Inc. v. Messick,* 700 F.2d 635 (11th Cir. 1983). If unconstitutional, however, the statute would not affect the availability of the relief ordered by the district court.

Section 664.02 provides, in pertinent part:

*Effect on existing industrial savings banks; prohibition on new charters.—*

(1) The charters of industrial savings banks existing at the time of adoption of this chapter shall continue in full force and effect, but no new charter shall be granted for an industrial savings bank.

By its terms this statute is facially neutral between in-state and out-of-state commerce in its absolute prohibition against the establishment of additional Florida ISBs. The defendant relies on this facial neutrality as proof that the statute does not violate the Commerce Clause. Our analysis, however, requires more in-depth consideration of the statute than that proposed by the defendant.

The Commerce Clause of the Constitution grants Congress the power "[t]o regulate Commerce ... among the several states." U.S. Const. art. 1, § 8, cl. 3. Although this language acts as a specific grant of power to Congress, the Supreme Court has long recognized that it also acts as a limitation on the power of the states to erect barriers against interstate trade. *Lewis v. BT Investment Managers, Inc.,* 447 U.S. 27, 35, 100 S.Ct. 2009, 2015, 64 L.Ed.2d 702, 711 (1980) (citations omitted). In the absence of conflicting federal legislation, the states, pursuant to their police powers, retain the authority to regulate matters of "legitimate" public concern, even when interstate commerce is affected. *See e.g., Raymond Motor Transportation Inc. v. Rice,* 434 U.S. 429, 98 S.Ct. 787, 54 L.Ed.2d 664 (1978). Yet even where legitimate local interests are implicated, the states must not act in a manner which places them in economic isolation. *Baldwin v. G.A.F. Seelig, Inc.,* 294 U.S. 511, 55 S.Ct. 497, 79 L.Ed. 1032 (1935). In essence, the state interest "may not be accomplished by discriminating against articles of commerce coming from outside the State unless there is some reason, apart from their origin, to treat them differently." *City of Philadelphia v. New Jersey,* 437 U.S. 617, 626–27, 98 S.Ct. 2531, 2537, 57 L.Ed.2d 475, 483 (1978).

The analysis necessary for a determination of whether a facially neutral state statute is unconstitutional under the Commerce Clause involves the same central inquiry as when the evaluation is applied to a facially discriminatory state statute. The primary focus in both instances is whether the "practical operation" or the "probable effect" of the challenged statute is discriminatory. In summary, discriminatory protectionist legislation is per se unconstitutional under the analysis applied in *City of Philadelphia v. New Jersey, supra,* ("where simple economic protectionism is effected by state legislation, a virtually per se rule of invalidity has been erected"). Alternatively, narrowly drawn state legisla-

tion which serves legitimate local purposes and is neutral in its effect upon local and interstate commerce is permissible if it survives scrutiny under the balancing test set forth in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). Under both tests, however,

> [t]he principal focus of inquiry must be the practical operation of the statute, since the validity of state laws must be judged chiefly in terms of their probable effects.

*Lewis*, 447 U.S. at 37, 100 S.Ct. at 2016, 64 L.Ed.2d at 712.

■ The fact that the legislation challenged in this action does not serve a valid local purpose is evidenced by the legislative history of § 664.02. The significant portion of this history reveals that

> Sections 34 and 35 of the bill were included in the bill because of growing concern over the use of industrial savings banks to circumvent restrictions on interstate banking. Two years ago, the legislature imposed a one-year moratorium on the issuance of new ISB charters pending the outcome of litigation over the application of Continental Illinois Corporation to establish ISBs in Florida. A federal court in Florida has now ruled in favor of Continental Illinois, and in the wake of that decision both Citicorp and BankAmerica Corporation have applied for ISB charters. Since Florida industrial savings banks are authorized to engage in virtually all banking activities with the exception of commercial and demand accounts, an ISB charter is seen as an effective way for out-of-state bank holding companies to gain access to Florida deposits.

> Accordingly, except for a temporary charter issued to facilitate a cross-industry conversion, merger, or acquisition, section 34 of the bill prohibits the issuance of any new industrial savings bank charters thus limiting the number of ISBs to the three that currently exist.

Committee on Commerce, Florida House of Representatives, Final Staff Summary of HB 801, at 2–3, May 31, 1984.

Thus, the avowed purpose of this statute is to protect Florida banks from competition by financial institutions owned by out-of-state holding companies. In *Lewis* the Supreme Court made clear that such protectionist legislation is unconstitutional in the context of non-banks.[5] As the Court pointed out, while banking and related financial activities are matters of profound local concern, they also contain important interstate attributes. *Id.* at 38, 100 S.Ct. at 2016, 64 L.Ed.2d at 713. The Court held

---

5. In support of its contention that the statute is justified by a local interest sufficient to withstand a Commerce Clause challenge, the defendant relies primarily on the Supreme Court's opinion in *Northeast Bancorp, Inc. v. Board of Governors*, 472 U.S. 159, 105 S.Ct. 2545, 86 L.Ed.2d 112 (1985). This reliance is misplaced. *Northeast Bancorp* dealt only with the constitutionality of certain state statutes authorizing interstate *bank* acquisitions on a regional basis. According to the Court these statutes did not violate the Commerce Clause despite the fact that non-regional bank holding companies were not allowed entry into a state's banking. The Court reached this conclusion based on the fact that this case did not present a dormant Commerce Clause issue. Congress has enacted legislation prohibiting the acquisition or expansion of banking subsidiaries across state lines, absent specific statutory authorization by the state in which the proposed acquisition is located. BHCA, 12 U.S.C. § 1842(d). Therefore, the Court held that in enacting such authorization for acquisitions, the Douglas Amendment granted states flexibility in drafting their statutes.

Crucial to an understanding of the distinction between *Northeast Bancorp* and the present case is the fact that *Northeast Bancorp* involved the acquisition of banks, an area in which Congress has acted. The present case does not involve banks, rather it applies only to ISBs, concededly non-banks. Congress has not acted to exclude similar establishment or acquisition of non-banks and therefore, *Northeast Bancorp* is not controlling. As the Court noted in *Northeast Bancorp*,

> There can be little dispute that the dormant Commerce Clause would prohibit a group of States from establishing a system of regional banking by excluding bank holding companies from outside the region if Congress had remained completely silent on the subject.

*Id.* at 174, 105 S.Ct. at 2553–54, 86 L.Ed.2d at 125, citing *Lewis*, 447 U.S. 27, 39–44, 100 S.Ct. 2009, 2017–19, 64 L.Ed.2d 702, 713–17.

that despite valid local concerns "the disparate treatment of out-of-state bank holding companies cannot be justified as an incidental burden necessitated by legitimate local concerns." *Id.* at 42, 100 S.Ct. at 2019, 64 L.Ed.2d at 716.

Moreover, it is clear that regardless of the statute's facial neutrality the effect of the law is to erect an insurmountable barrier to the market of Florida deposits by out-of-state bank holding companies. While in-state bank holding companies are also precluded from establishing ISBs, they have the alternative of establishing traditional banks and thereby gaining access to Florida deposits.[6] In fact, we must assume that in-state bank holding companies would normally choose to establish a bank, with all its attendant rights, as opposed to an ISB, which has limited functions.[7]

The Supreme Court has emphasized that careful scrutiny is required, for Commerce Clause purposes, in order to uncover "ingenious" state statutes which appear neutral but whose practical operation discriminates against interstate commerce. In *Best & Co., Inc. v. Maxwell*, 311 U.S. 454, 61 S.Ct. 334, 85 L.Ed. 275 (1940), the Court considered a challenge by a New York retailer to a $250.00 North Carolina tax on every person "not a regular retail merchant in the state," who displayed samples in a temporarily occupied hotel room for the purpose of securing retail orders. Although the tax was facially neutral the Court found it to be an unconstitutional subterfuge for discrimination against out-of-state salespeople. The Court held:

> The commerce clause forbids discrimination, whether forthright or ingenious. In each case it is our duty to determine whether the statute under attack, what-

ever its name may be, will in its practical operation work discrimination against interstate commerce. This standard we think condemns the tax at bar. Nominally the statute taxes all who are not regular retail merchants in North Carolina, regardless of whether they are residents or nonresidents. We must assume, however, on this record that those North Carolina residents competing with appellant for the sale of similar merchandise will normally be regular retail merchants. The retail stores of the state are the natural outlets for merchandise, not those who sell only by sample. Some of these local shops may, like appellant, rent temporary display rooms in sections of North Carolina where they have no permanent store, but even these escape the tax at bar because the location of their central retail store somewhere within the state will qualify them as 'regular retail merchants in the State of North Carolina'.... Interstate commerce can hardly survive in so hostile an atmosphere.

. . . .

> The freedom of commerce which allows the merchants of each state a regional or national market for their goods is not to be fettered by legislation, the actual effect of which is to discriminate in favor of intrastate businesses, whatever may be the ostensible reach of the language.

*Id.* at 455–57, 61 S.Ct. at 335–36, 85 L.Ed. at 277–78. (Citations omitted.)

In summary we find that, although artfully drafted, the practical effect of § 664.02 and its stated purpose is the protection of in-state banking from competition by financial institutions owned by out-of-state

---

**6.** As discussed in footnote 3, *supra,* § 3(d) of the BHCA makes this alternative unavailable to out-of-state bank holding companies.

**7.** The BHCA defines a bank as any institution organized under state or federal law which "(1) accepts deposits that the depositor has a legal right to withdraw on demand, and (2) engages in the business of making commercial loans." 12 U.S.C. § 1841(c). Florida ISBs are clearly not banks. Although they are authorized to

make commercial loans, they may not take demand deposit accounts. Florida ISBs may accept negotiable order of withdrawal ("NOW") accounts, but NOW accounts are not considered demand deposit accounts under the BHCA. *Federal Reserve Board v. Dimension Financial Corp.,* 474 U.S. 361, 106 S.Ct. 681, 88 L.Ed.2d 691 (1986).

bank holding companies. The Commerce Clause prohibits a state from using its regulatory power in such a manner to protect its own citizens from outside competition. Section 664.02 is unconstitutional, and therefore does not moot the controversy presented by this case. We now turn to a consideration of the constitutionality of the two other Florida statutes involved in this action.

*Sections 658.29 and 664.03(3).*

■ In conjunction Fla.Stat. §§ 658.29 and 664.03(3) prohibit non-Florida bank holding companies from operating ISBs in Florida. The district court found this prohibition to be facially constitutional, but unconstitutional as applied to Continental. We affirm the district court in its conclusion that the statutes are unconstitutional as applied to Continental, but we disagree with the court's holding of facial validity.

The district court's determination that these statutes were facially constitutional was premised on its conclusion that Florida ISBs are authorized, under Florida law, to act as "banks," and therefore can constitutionally be prohibited from entry into the Florida banking market pursuant to the Douglas Amendment to the Banking Holding Company Act of 1956 ("BHCA") 18 U.S.C. § 1842(d) (West Supp. 1987).[8] According to Florida law, an ISB is not authorized to accept demand deposits. However, negotiable order of withdrawal ("NOW") accounts are permissible. Fla.Stat. § 664.-08(1) (1984). Concomitant with the charter for a state ISB is the authority to engage in commercial loan transactions. Fla.Stat. § 664.07 (1984). Based on two decisions (one administrative and one judicial) that the term "demand deposit" includes within its ambit NOW accounts, the district court determined that by offering NOW accounts and having the authority to make commercial loans Florida ISBs could operate as "banks" within the definition contained in the BHCA.[9]

In *First Reserve Board v. Dimension Financial Corp.*, 474 U.S. 361, 106 S.Ct.

681, 88 L.Ed.2d 691 (1986), the Supreme Court held that NOW account deposits are not a form of demand deposit, observing that financial institutions offering NOW accounts retain a seldom exercised but nevertheless absolute right to require prior notice of withdrawal. *Id.* at 367, 106 S.Ct. at 685, 88 L.Ed.2d at 698. Florida ISBs are therefore not able to offer demand accounts and are not banks as defined by the BHCA. For this reason we reverse the district court's decision that the statutes are facially constitutional, finding, for the reasons stated below, that Florida's attempt to prohibit out-of-state ownership of in-state non-banks is unconstitutional.

Although the district court found the statutes facially constitutional, it held that the statutes were unconstitutional as applied to Continental. According to the court, even if Continental was authorized by Florida law to act as a bank, federal law prohibits ISBs from making commercial loans and therefore Continental is precluded from actually engaging in one of the two activities required to fulfill the definition of banking. Because Continental could not operate as a bank under the BHCA, the district court held that the Florida legislation excluding a non-bank owned by an out-of-state bank holding company was in derogation of the Commerce Clause. We agree. The Supreme Court made it abundantly clear in *Lewis* that states are not free to exclude non-banks based on geographic factors. *Lewis* is therefore controlling.

■ As noted earlier, Continental moved for attorney's fees, which motion was denied by the district court. Continental's motion was made pursuant to 42 U.S.C. § 1988 (1981) or, in the alternative "pursuant to the court's inherent power to award such fees for 'bad faith.'" The defendant opposed the motion on several grounds. First the defendant argued that the motion was untimely. The defendant also urged that it was unfairly surprised and preju-

---

**8.** See footnote 5, *supra.*

**9.** See footnote 6, *supra.*

diced by Continental's motion to the extent it sought attorney's fees under § 1988. Finally, the defendant contended that the plaintiffs could not have prevailed under § 1983. In its order denying the plaintiff's motion the district court said only that it had "reviewed the arguments of the parties and the relevant case law" and had determined that the motion should be denied, without stating its reasons for the denial. Although we review the district court's denial of attorney's fees only for an abuse of discretion, without any explanation it is impossible for us to discern the correctness of the district court's judgment. It is necessary, therefore, to remand the case to the district court for an explanation of the basis for its denial of the plaintiff's motion for attorney's fees.

Consequently, we AFFIRM the district court's determination that § 664.02 does not moot the appeal. We AFFIRM the judgment of the district court that, in conjunction, §§ 658.29 and 664.03(3) are unconstitutional. We REMAND the case to the district court for further findings and the legal basis for its denial of the plaintiff's motion for attorney's fees.