TRAILER MARINE TRANSPORT CORP., Plaintiff,

v.

Carmen M. RIVERA VAZQUEZ, Executive Director of the Automobile Accident Compensation Administration of Puerto Rico ("AACA"), et al., Defendant.

Civ. No. 90–1374 (JP).

United States District Court, District of Puerto Rico.

Sept. 26, 1991.

Nicolás Jiménez Torres, Jiménez, Graffam & Lausell, San Juan, P.R., for plaintiff.

Carlos Del Valle, Ramírez & Ramírez, Hato Rey, P.R., for defendant.

## OPINION AND ORDER

PIERAS, District Judge.

The Court has before it the parties cross motions for summary judgment. Plaintiff is a corporation engaged in the transportation of goods by sea. The plaintiff challenges the constitutionality of Puerto Rico Law 26 (amendment to 9 L.P.R.A. § 2064 (1976)), which provides for the assessment by the Automobile Accident Compensation Administration ("AACA"), of a special premium upon van trailer vehicles engaged in maritime transportation. These van trailers enter the island on a temporary basis. Plaintiff claims that the special premium is unconstitutional because it obstructs the flow of interstate commerce. Plaintiff thus requests a judgment declaring Law 26 unconstitutional on its face pursuant to the Dormant Commerce Clause.[1]

---

1. The procedural history of this case is as follows. On March 14, 1990, the plaintiff filed a complaint against the defendants in civil case No. 90–1373 challenging the constitutionality of

Federal jurisdiction is invoked pursuant to 28 U.S.C. § 1331 (1976), as the action arises under U.S. Const. art. I, § 8, cl. 3. Defendants contend that Law 26 is a health and safety regulation consistent with the Commerce Clause. For the reasons stated below, we grant the plaintiff's Motion for Summary Judgment and deny the defendant's Motion for Summary Judgment.

## I. THE FACTS

The Automobile Accident Social Protection Act ("the Act"), 9 P.R. Laws Ann. § 2051 *et seq.* (Supp.1988) is social legislation with the purpose of creating a compulsory system for the compensation of automobile accident victims, irrespective of fault. This social legislation is implemented by AACA, and financed through the payment of registration fees by all vehicle owners. In 1989 the legislature enacted an amendment to the Act which provided for the assessment of a reduced fee upon trailers that would be in Puerto Rico for less than thirty days. H.R. 741, Act 27, Dec. 12, 1989 amendment to 9 L.P.R.A. § 2064 (1976). Rather than pay the regular annual $35.00 premium, the amendment permits transitory trailers to instead pay $15.00 for each chassis that is brought into Puerto Rico for less than a thirty-day period.

Plaintiff claims that the special premium burdens ocean carriers like itself, which utilize roll-on-roll-off ("RORO") vessels, rather than lift-on-lift-off ("LOLO") vessels. The plaintiff's roll-on-roll-off method of carrying trailers introduces into Puerto Rico a chassis[2] for each container it car-

ries, because the plaintiff has no chassis permanently located in Puerto Rico.

In contrast, lift-on-lift-off vessels carry containers without the chassis, which would transform the vessel into a trailer. Large shore-based cranes lift the containers off the vessel and place them on a shore-based chassis where the container is coupled and secured to form a trailer. The trailers are placed in the yard to await delivery to the ultimate consignee. When the trailer is returned, the operation is reversed and the crane lifts the container off the chassis and loads it on board the vessel, leaving the chassis behind. The regular $35.00 annual AACA premium is paid for each chassis permanently established in Puerto Rico.

Plaintiff conducts business in Puerto Rico solely with the trailers that are transitorily brought aboard its barges. Because the plaintiff does not have a number of chassises permanently located on the island, it introduces into Puerto Rico a chassis for each container it carries. Plaintiff's trailers are carried aboard a roll-on-roll-off barge. Upon arrival of a barge in Puerto Rico, the trailers are rolled off of the barge by a tractor and are parked in a marshalling yard. Within a matter of a few hours or a few days, the trailers are then picked up by a trucker for final delivery to the ultimate consignee. Once the cargo is unloaded from the container, the trailers are then returned to the plaintiff's terminal for return voyage to the United States. The tractors used to haul and deliver the trail-

---

Law 27, an amendment to P.R. Law 141. Law 27 is a state tax which requires the payment of a registration fee of five dollars for each entry into Puerto Rico of a trailer, up to a maximum of sixty-five dollars. On the same day the plaintiff also filed a complaint against the defendants in civil case No. 90–1374 challenging the constitutionality of the Law 26 insurance premium. These two cases were later consolidated. On March 27, 1990, this Court issued an Opinion and Order dismissing civil case No. 90–1373 for subject matter jurisdiction. The Opinion and Order also denied the plaintiff's request for a temporary restraining order as to the enforcement of Law 26.

On October 24, 1990, the Court issued another Opinion and Order dismissing the complaint in civil case No. 90–1374 pursuant to the Burford

abstention doctrine. *Trailer Marine Transport Corp. v. Rivera Vázquez,* 749 F.Supp. 376, (D.C.P.R.1990). The plaintiffs later appealed the judgment of the Court. The First Circuit vacated the judgment of the Court and remanded it for further proceedings based upon its ruling that the case did not fall within the narrow *Burford* exception to federal jurisdiction. *Trailer Marine Transport Corp. v. Rivera Vázquez,* 931 F.2d 961 (1st Cir.1991).

**2.** A chassis is the steel frame equipped with wheels, upon which is mounted the body of the trailer. The trailer is the combination of the chassis and the metal containers which carry the cargo. Each trailer is attached to a tractor for transportation to inland locations.

ers are locally based vehicles, which upon their registration are licensed and provided with license plates by the Commonwealth authorities. The plaintiff does not own most of the trailers it carries. In the instances in which the plaintiff owns the trailer, it pays Maine state registration fees, but does not pay no-fault insurance, because Maine does not subject trailers to the same fees as its other motor vehicles. Plaintiff must pay the $15.00 premium for a thirty-day stay, or choose to pay the $35.00 premium for the entire year. The non-owned trailers have their home-state registration fees and AACA fees paid by their respective owners.

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

■■■ A motion for summary judgment is appropriate when:

[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). *Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir.1989); *see e.g., Medina–Muñoz v. R.J. Reynolds*, 896 F.2d 5 (1st Cir.1990). A "genuine" issue is one that is dispositive, and must therefore be decided at trial. *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A "material" fact is one which affects the outcome of the suit and must be resolved before attending to related legal issues. *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d at 181.

■■■ Essentially, Rule 56(e) mandates that summary judgment be entered against a party who fails to establish the existence of an element essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324,

106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Thus, the burden is first on the movant, to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. at 325, 106 S.Ct. at 2554. Thereafter, the burden shifts to the nonmovant to establish the existence of a genuine material issue. *Brennan v. Hendrigan*, 888 F.2d at 191. The nonmovant, however, cannot rest upon mere allegation or denial of the pleadings. Fed.R.Civ.P. 56.

Although the parties in this case have filed cross-motions for summary judgment on the issue of liability,[3] such motions "are not ordinarily to be treated as the equivalent of submission upon an agreed-upon record." *Wiley v. American Greetings Corp.*, 762 F.2d 139, 140 (1st Cir.1985). Cross-motions for summary judgment

are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist. If any such issue exists it must be disposed of by a plenary trial and not on summary judgment.

*Id.* at 140–41 (citation omitted). In the instant case, there are no genuine issues of material fact which require a plenary trial. An application of the dormant Commerce Clause jurisprudence mandates that the defendants' Motion for Summary Judgment be DENIED and that the plaintiff's Motion for Summary Judgment be GRANTED.

## III. DORMANT COMMERCE CLAUSE

■■■ The Commerce Clause, Article I, § 8, cl. 3 of the U.S. Constitution gives Congress the power to "regulate Commerce with foreign Nations, and among the several States, and with the Indian tribes." The Commerce Clause serves two distinct functions: (1) it acts as a source of Con-

---

**3.** At the Status Conference of June 17, 1991, the parties agreed to submit this case for resolution based upon their cross-motions for summary judgment. The parties further agreed to restrict their requests for summary judgment to the Commerce Clause jurisprudence rather than that of the Equal Protection Clause.

gressional authority and (2) it acts implicitly as a limitation on state legislative power. This latter implicit limitation is what is known as the dormant Commerce Clause. *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824). The purposes behind the Commerce Clause are the creation and nurturing of a common market among the states and the abolition of trade barriers. *Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511, 55 S.Ct. 497, 79 L.Ed. 1032 (1935). Therefore, when a party makes a dormant Commerce Clause challenge, the Court must weigh the state interest in regulating its local affairs against the national interest in uniformity and in an integrated national economy. *Hyde Park Partners, L.P. v. Connolly*, 839 F.2d 837 (1st Cir. 1988). In performing this balancing test, the Court may consider not only the objectives which the state is pursuing but also the necessity of the means which the state has used to achieve this objective. If the objective can be achieved by means less burdensome (or less discriminatory) to interstate commerce, the balance weighs in favor of the national interest in free commerce. *Dean Milk v. City of Madison*, 340 U.S. 349, 71 S.Ct. 295, 95 L.Ed. 329 (1951) (local regulations preventing importation of milk were struck down because even though the state's objective of protection of residents against adulterated milk was permissible, the safety objective could have been achieved by less burdensome means— such as sending of inspectors to out-of-state pasteurization plants to make quality checks at the out-of-state producer's expense, rather than prohibiting importation of milk that had not been processed and bottled within five miles of the city of Madison, Wisconsin, so that only regularly inspected local plants could sell milk). *See also, A & P Tea Co., Inc. v. Cottrell*, 424 U.S. 366, 96 S.Ct. 923, 47 L.Ed.2d 55 (1976).

A state regulation which affects interstate commerce must meet each of the following requirements in order to be upheld:

1. the regulation must pursue a legitimate state end;
2. the regulation must be rationally related to that legitimate end; and
3. the regulatory burden imposed by the state on interstate commerce, and any discrimination against interstate commerce, must be outweighed by the state's interest in enforcing its regulation.

L. Tribe, *American Constitutional Law*, at 326 (1978).

A state's regulation of the instrumentalities of interstate commerce such as transportation on highways requires careful evaluation of the latter two factors, as the pursuit of a public safety objective is a legitimate state objective rarely in question. But when the regulation's contribution to safety is marginal or speculative, there is little doubt that the safety interest is outweighed by the burdens on commerce. *Southern Pacific Co. v. Arizona*, 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945) (Arizona regulation prohibiting the operation of trains having more than fourteen passenger cars or seventy freight cars because shorter trains would reduce the number of train accidents, violative of Commerce Clause because increase in safety was so slight or problematical as not to outweigh the national interest in keeping interstate commerce free from interferences which seriously impede it). Furthermore, the existence of an intent to discriminate against interstate commerce, or even an intended discriminatory effect, favors a striking of the balance in favor of interstate commerce. *Kassel v. Consolidated Freightways Corp.*, 450 U.S. 662, 101 S.Ct. 1309, 67 L.Ed.2d 580 (1981) (Iowa regulation prohibiting use of 65–foot double trucks from the highways was struck down because it bore disproportionately on out-of-state residents and businesses, because of exemptions favoring local interest such as a longer length-limit for trucks hauling livestock or other farm-related goods— which was discrimination against interstate commerce). It is therefore irrelevant that some local enterprises in Puerto Rico also utilize the RORO system, if regulation of the RORO system disproportionately burdens interstate commerce. *See also, Healy v. The Beer Institute, Inc.*, 491 U.S. 324, 340, 109 S.Ct. 2491, 2501, 105 L.Ed.2d 275

(1989) ("this Court has followed a consistent practice of striking down state statutes that clearly discriminate against interstate commerce, unless that discrimination is demonstrably justified by a valid factor unrelated to economic protectionism"); *New Energy Co. v. Limbach,* 486 U.S. 269, 279 n. 3, 108 S.Ct. 1803, 1811 n. 3, 100 L.Ed.2d 302 (1988) ("a subjective purpose that has so little rational relationship to the provision in question is not merely implausible but, even if true, inadequate to validate patent discrimination against interstate commerce"); *Philadelphia v. New Jersey,* 437 U.S. 617, 624, 98 S.Ct. 2531, 2535, 57 L.Ed.2d 475 (1978) ("where simple economic protectionism is effected by state legislation, a virtually per se rule of invalidity has been erected"). Whether a state statute unconstitutionally discriminates against commerce is determined by its practical operation, not by the ostensible reach of its language. *Best & Co. v. Maxwell,* 311 U.S. 454, 456, 61 S.Ct. 334, 335, 85 L.Ed. 275 (1940). In this case, the Court's careful evaluation of Law 26 reveals its violation of the Commerce Clause.

## IV. THE AACA REGULATORY SYSTEM

■ The provision of the statute which is at issue in this case states:

> The amendment gives a new option to van trailer vehicles engaged in maritime transportation for bringing cargo into Puerto Rico from abroad and that enter the island on a temporary basis. These may now opt to pay a special premium for their brief stay on the island, instead of the regular annual premium, regardless of whether they are registered. The Administration's Board will fix the special premium, based on the number of times the vehicles enter Puerto Rico. The Administration will establish a mechanism for making the payments. Even though the fees will be paid in the Internal Revenue Offices of the Department of the Treasury, the Administration will establish a mechanism for making the payments.

H.R. 741, Act 27, Dec. 12, 1989 amendment to 9 L.P.R.A. § 2064 (1976) (emphasis added).

The "significant interest of Puerto Rico in the welfare of its citizens exposed to injury and death through operation of motor vehicles", is the justification the defendants proffer for this legislation which in effect imposes a $15.00 fee each time a transitory RORO trailer is brought to Puerto Rico (as opposed to the annual $35.00 fee for in state LOLO trailers). Defendants' Motion for Summary Judgment Memorandum of Law, paragraph 82. It is within the Administration's discretion to determine what payment mechanism is most rationally related to the goal of highway safety. In promulgating the Act, the legislature provided that AACA set forth the necessary regulations to enforce the provisions of the Act. 9 L.P.R.A. § 2060(3). AACA is empowered to set a premium with the approval of the Commissioner of Insurance. This premium is used solely for the compensation of victims and for the administrative expenses of the no-fault scheme. The Act also empowers AACA to investigate the financial liability aspects of automobile accidents and accident prevention in order to make recommendations for change to the Governor and the legislature. 9 L.P.R.A. § 2063(2).

Even though it was the legislature which originally decided to fix the premium based upon the number of times a vehicle enters Puerto Rico, it is up to the AACA Board to decide how the proportionality should be evaluated. The Act provides for the *setting of rates based upon the actuarial studies and experience of the AACA Board.* 9 L.P.R.A. § 2063(4). Yet, the statistics upon which the defendants allegedly based the fixing of the special premium at $15.00, are merely comparative figures showing that tractor trailer accidents (not trailer accidents) are more likely than ordinary vehicle accidents to involve serious injuries. They are not in any way related to the actuarial experience of transitory trailers, and defendants have no statistics on the risk of accidents posed by plaintiff's trailers as opposed to the locally based LOLO competitors. Furthermore no

actuarial study was ever made. ISC Order Stipulated Fact Q. By imposing the special premiums only on RORO carriers, when there is no conclusive proof that RORO carriers cause a disproportionate number of accidents on Puerto Rico's roads and highways each year, LOLO carriers in Puerto Rico have been given a competitive advantage in the interstate market. This competitive advantage is best illustrated by the example of a RORO trailer which is brought to the island at least three times in one year and is assessed the $15.00 special premium three times in one year ($45.00 total) for a stay of not more than three months; while a LOLO trailer is on the island for the entire year and is only assessed the $35.00 premium. Furthermore, if the RORO trailer stays one day beyond thirty days it must then pay the entire $35.00 premium in addition to the $15.00 special premium it has already paid.

The defendant's interest in collecting a premium from transitory trailers must be distinguished from its interest in collecting a higher premium from roll-on-roll-off than from lift-on-lift-off domestic and foreign competitors. The act of setting such premium at a level which is more costly to RORO carriers of transitory trailers than it is to LOLO carriers of also transitory trailers must correspond to some state interest in order not to be a violation of the Commerce Clause. As the defendants did not rely upon the required actuarial studies and the statistics presented are not related to the actuarial experience of transitory trailers, the proposition that RORO transitory trailer should be assessed the arbitrary and disproportionate amount of $15.00 in furtherance of the state interest in public safety, is speculative.

Therefore, even though the regulation purports to pursue the legitimate state interest of public safety (the first factor in Commerce Clause analysis), and the assessment of premiums is rationally related to the legitimate goal of public safety (the second Commerce Clause factor), there is little doubt that the safety interest is outweighed by the burdens on interstate commerce when the regulation's contribution to safety is marginal and speculative (the third Commerce Clause factor). *Southern Pacific Co. v. Arizona*, 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945). It is irrelevant that the actual language of the regulation does not set forth a discriminatory goal, as whether a state statute unconstitutionally discriminates against interstate commerce is determined by its practical operation, not by the ostensible reach of its language. *Best & Co. v. Maxwell*, 311 U.S. 454, 456, 61 S.Ct. 334, 335, 85 L.Ed. 275 (1940).

The Court's conclusion that the challenged regulation is related to a goal of economic protectionism rather than a true interest in public safety, is further supported by the Law 26 Statement of Purpose. Law 26 provides in its "Statement of Purpose" that:

> The Automobile Accident Compensation Administration (AACA) has not yet been earning an annual income of $4,700,000.00 in premiums corresponding to the trailers, brought from abroad, being used by companies engaged in maritime shipping for moving cargo along domestic public roads. (Plaintiff's Translation Memo p. 20)

Thus, the legislation's goal is the collection of revenue, rather than the fashioning of a mechanism for assessing premiums which represents the RORO and LOLO proportional threat to public safety.

## V. CONCLUSION

The premium scheme applied to transitory trailers and specifically the fixing of the special premium for transitory trailers at the arbitrary amount of $15.00 per entry, has the effect of favoring the carriers which maintain locally based, locally owned and locally registered chassis to move containers brought to the Island aboard their "lift-on-lift-off" vessels, and discriminating against plaintiff, who chooses to perform the operation of coupling the container to its chassis in another state of the Union before bringing it to the Island, and thus burdens interstate commerce. One alternative which does not have this discriminatory effect is to charge RORO carriers premiums based upon the average number of

trailers it has rolling on the roads and highways of Puerto Rico on any given day of the year. The defendants should explore such nondiscriminatory options when they perform the requisite statistical studies, before imposing arbitrary premiums.

Wherefore, in view of the foregoing, the Court finds that Law 26 is unconstitutional in that it violates the Commerce Clause. The plaintiff's Motion for Summary Judgment is hereby GRANTED and the defendant's Motion for Summary Judgment DENIED. Judgment shall be entered accordingly.

IT IS SO ORDERED.